Bessie STANLEY, Estate of Joseph Stanley, Deceased, Bessie Stanley, Executrix, etc., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 19070.

United States Court of Appeals
Ninth Circuit.

Nov. 12, 1964.

■■■■■■■■

Henry W. Howard, Howard N. Nemerovski, Daniel S. Morrison, Howard, Prim & Smith, San Francisco, Cal., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, C. Moxley Featherston, David I. Granger, Dept. of Justice, Washington, D. C., for respondent.

Before HAMLIN, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Petitioner, Bessie Stanley, seeks review of a decision of the Tax Court which is reported at 40 T.C. 851 (1963). We conclude that the decision of the Tax Court was correct.

The facts are stipulated. Joseph and Bessie Stanley were husband and wife, and all of their property was community property under the laws of the State of California. Joseph died on November 15, 1958. Before his death he and Bessie made three sales of property, one in 1952 and two in 1954. Each was of a linen supply business and of real and personal property. The sale price in each case was payable in installments. For federal income tax purposes the Stanleys elected to return the gains from each of these sales on the installment basis, as permitted by section 44 of the Internal Revenue Code of 1939 and section 453 of the Internal Revenue Code of 1954. Under these sections, an aliquot portion of each installment received is treated as the receipt of a fraction of the total capital gain involved in the sale.

■ The installment obligations resulting from these sales were also community property in which Joseph and Bessie each had a one-half interest. Joseph's interest was included in his gross estate for federal estate tax purposes at a fair market value on the date of his death of $681,656.34. This was one-half of the outstanding aggregate balance of $1,363,312.69 remaining unpaid on the installment obligations at the date of his death. Bessie did not sell or exchange her property interest in any of the installment obligations. For the taxable periods November 16, 1958 through April 30, 1960 she did not show on her tax returns any taxable income resulting from the installment payments that she received. Her theory is that her one-half interest in the community property, and particularly her one-half interest in these installment obligations, obtained a new basis under section 1014(a) and 1014(b)(6) of the Internal Revenue Code of 1954. She says that that basis was the fair market value of her interest at the date of Joseph's death and that consequently, since all that she received after his death was a repayment to her of that fair market value, she had no taxable capital gain. The Commissioner disagreed, and that is what produced this case. The Tax Court agreed with the Commissioner, and so do we.

On this appeal, Bessie's contention is that the literal language of section 1014 requires the result for which she contends. That language, so far as is deemed material here, is as follows:

"(a) *In general.*—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall * * * be the fair market value of the property at the date of the decedent's death * * *."

"(b) *Property acquired from the decedent.*—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

"(1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;

"(2) Property transferred by the decedent during his lifetime in trust * * *." (upon certain terms)

"(3) * * * [P]roperty transferred by the decedent during his lifetime in trust * * *." (upon certain terms)

"(4) Property passing without full and adequate consideration under a general power of appointment exercised by the decedent by will;

"(5) * * * [P]roperty acquired by bequest, devise, or inheritance or by the decedent's estate from the decedent, if the property consists of stock or securities of a foreign corporation, which * * * was * * a foreign personal holding company * * * *

"(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State, Territory, or possession of the United States or any foreign country, if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) or section 811 of the Internal Revenue Code of 1939;

"(7) In the case of decedents dying after October 21, 1942, and on or before December 31, 1947, such part of any property, representing the surviving spouse's one-half share of property held by a decedent and the surviving spouse under the community property laws of any State, Territory, or possession of the United States or any foreign country, as was included in determining the value of the gross estate of the decedent, if a tax under chapter 3 of the Internal Revenue Code of 1939 was payable on the transfer of the net estate of the decedent. * * *

"(8) * * * [P]roperty which represents the survivor's interest in a joint and survivor's annuity * *

"(9) In the case of decedents dying after December 31, 1953, property acquired from the decedent by reason of death, form of ownership, or other conditions (including property acquired through the exercise or non-exercise of a power of appointment), if by reason thereof the property is required to be included in determining the value of the decedent's gross estate under chapter 11 of subtitle B or under the Internal Revenue Code of 1939. * * *" (There follow certain special provisions regarding basis of this property)

"(c) *Property representing income in respect of a decedent.*—This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691."

Essentially, Bessie's position is that by reason of section 1014(b) (6) her one-half of the community property, including her one-half interest in the installment obligations, obtained a new basis under subsection (a) of section 1014 because at least one-half of the whole of the community interest was includible in determining the value of Joseph's estate. She contends further that subsection (c) of section 1014 does not affect this result because the only property there described is Joseph's one-half interest, not her one-half interest. She says that this is made plain by the provisions of section 691 to which reference is made in subsection (c).

We therefore quote the pertinent portions of section 691:

"*Recipients of income in respect of decedents*

"(a) *Inclusion in gross income.*—

"(1) *General rule.*—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * *

shall be included in the gross income, for the taxable year when received, of:

"(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

"(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

"(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

\*   \*   \*   \*   \*   \*

"(4) *Installment obligations acquired from decedent.*—In the case of an installment obligation received by a decedent on the sale or other disposition of property, the income from which was properly reportable by the decedent on the installment basis under section 453, if such obligation is acquired by the decedent's estate from the decedent or by any person by reason of the death of the decedent or by bequest, devise, or inheritance from the decedent—

"(A) an amount equal to the excess of the face amount of such obligation over the basis of the obligation in the hands of the decedent (determined under section 453(d)) shall, for the purpose of paragraph (1), be considered as an item of gross income in respect of the decedent; and

"(B) such obligation shall, for purposes of paragraphs (2) and (3), be considered a right to receive an item of gross income in respect of the decedent, but the amount includible in gross income under paragraph (2) shall be reduced by an amount equal to the basis of the obligation in the hands of the decedent (determined under section 453(d))."

Under the California law, Bessie owned her one-half interest in the installment obligations and the right to the income from such interest, both during Joseph's lifetime and after his death. She argues that it cannot be income in respect of a decedent within the meaning of section 691. She points out that Joseph's estate did not acquire the right to receive any part of her income by reason of his death (subparagraph (A)), that she herself did not acquire the right to receive any part of her income by reason of his death (subparagraph (B)), and that she did not acquire the right to receive her income from Joseph by bequest, devise or inheritance, (subparagraph (C)). On the contrary, she says that she owned that right all along, as indeed she did. She says further that the interest in the installment obligation that she owns was not received by decedent on the sale or other disposition of property within the meaning of section 691(a) (4), and that the income that she received during Joseph's lifetime, while it was properly reportable by her on the installment basis, was not properly reportable by Joseph, the decedent, who is referred to in subdivision (4) of subsection (a) of section 691. Section 691, she says, can refer only to Joseph's one-half interest in the installment obligations and only to income derived from his one-half interest.

It is primarily on the basis of the foregoing analysis of the meaning and application of section 691 that Bessie contends that subsection (c) of section 1014 does not affect her case because that section refers only to "property which constitutes a right to receive an item of income in respect of a decedent under section 691." She contends that even though it may be that this construction of the two sections is inconsistent with the admitted general purpose of section 1014 to equalize the position, as to "basis," of surviving spouses in community property states and non-community property states, her posi-

tion must still be upheld because it is in accord with the literal language of the sections. She urges that the adoption of a contrary view by the courts would be judicial legislation, and that the remedy, if one be necessary, should come from the Congress, rather than from the courts. She cites several cases, including decisions of this court, where a comparable position has been taken with reference to other provisions of the Internal Revenue Code.

■ We think that section 1014 does not so clearly require the result for which Bessie contends as she urges that it does. The general rule set forth in subsection (a) of section 1014 relates to "property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent." This language, read literally, would not cover Bessie's one-half interest in California community property, which she owns and does not derive in any way from Joseph. Subsection (b) of section 1014 says that *"for purposes of subsection (a)*, the following property *shall be considered* to have been acquired from or to have passed from the decedent: \* \* \*." (Emphasis ours). It then lists nine categories, each of which is described by the word "property". Categories (1) and (5) deal with property that would normally be inventoried in the decedent's probate estate and included in his estate for estate tax purposes. In some states this would include the entire interest in property acquired by the husband during the marriage. In community property states like California it would include half of it. Categories (2), (3), (6), (7) and (8) are types of property which, by reason either of a conveyance by the decedent, or of the community property laws of certain states, would not normally be a part of the probate estate of decedent and which would be included, if at all, in the gross estate for federal estate tax purposes solely by reason of the provisions of the Internal Revenue Code. Category (4) is similar, though not the same. The same can be said of category (9), at least as to certain properties that would fall within

the language of category (9). The device used by the draftsman was to list these various categories of property interests and bring them all within the purview of subsection (a) by the fiction that they are to be considered to have been acquired from, or to have passed from, the decedent. Some of them would fall within subsection (a) if not listed in subsection (b); others would not. Thus the "fiction" is fact as to some categories, fiction as to others. The object is to give similar treatment, for subsection (a) purposes, to each.

■ On the other hand, in subsection (c) the reference is not to either subsection (a) or subsection (b), or any of its subparagraphs, but to "this section," i. e., the whole of section 1014. This means, at the least, that no new basis as defined in subsection (a) is acquired by Joseph's one-half interest in the installment obligations here involved. Joseph's interest falls under category (1) of subsection (b). Bessie concedes that his interest falls literally within the exception mentioned in subsection (c). To construe the section as nevertheless permitting her interest in the same property, which falls under category (6), to acquire a new basis under subsection (a) would be to defeat the equalizing purpose of the section. We do not think that the language of the section compels such a result. We think that we should construe subsection (c) as referring to all nine categories, not to all categories except (6) and (7). The fictive device of subsection (b) could then be said to make category (6) and (7) interests just as much income in respect of a decedent under section 691, though solely for purposes of subsection (a) of section 1014, as any property in the other categories. Subsection (c) would then make the whole of section 1014, including categories (6) and (7), inapplicable.

■ Subsection (c) says that the *section* is not to apply. We think that this was intended to take all items of property of the *type* described in section 691, and falling within any of the nine

categories of section 1014, out of section 1014. This accomplishes a uniform result, regardless of the form of ownership of the property, as to all types of property described in section 1014. This construction is consistent with the admitted purpose of section 1014, while the construction suggested by Bessie is not. It is too well established to require citation of authority, that where a court is in doubt as to the meaning of the statute, it is entitled to look to the purpose behind the statute in construing it.

We note that the Court of Appeals for the 5th Circuit is in agreement with the result that we reach here. See Bath v. United States, 1963, 323 F.2d 980, and the opinion of the trial court in the same case, 1962, D.C., 211 F.Supp. 368.

Affirmed.