Cloyes COLLINS and Lavare Collins,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 70-378.

United States District Court,
C. D. California.

Sept. 24, 1970.

Surr & Hellyer, by Michael B. Arkin and Walter J. Tribbey, San Bernardino, Cal., for plaintiffs.

Robert L. Meyer, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty. and Chief, Tax Division, by Brice A. Tondre, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OF OPINION

IRVING HILL, District Judge.

In this case, the widow [1] of a business executive seeks a refund of income tax paid on payments made to her by her late husband's employers under contracts negotiated by the decedent during his lifetime. She claims that the payments made to her had acquired a stepped-up basis under IRC § 1014.

The Court has before it cross motions for summary judgment. Both sides concede, and the Court finds, that there is no disputed issue of material fact. Both sides concede that the only question involved in the case is a question of law and that the matter is ripe for summary judgment. I find, as both sides agree, that a timely claim for refund was made and constructively denied, and that this Court has jurisdiction of the action.

For reasons that are apparent from the discussion which follows, the Court grants the government's summary judgment motion, and denies the summary judgment motion of Plaintiffs.

The facts can be simply stated. Mr. and Mrs. Truscott were married in 1938, remained married until his death on May 24, 1964, and were at all times residents of California. During all relevant

1. The decedent husband in question was named Earl Truscott. His widow has since remarried a Mr. Collins. Both Mr. and Mrs. Collins are Plaintiffs because Mr. Collins was a signatory of joint income tax returns for the years in question.

periods and up to the date of his death, Mr. Truscott was employed simultaneously by two apparently interrelated corporations, Mountain View Cemetery, and Montecito Memorial Park Corporation. Mr. Truscott had identical agreements with each corporation, executed January 10, 1962, which provided that if he died while still employed, the corporation would pay to his widow $500 per month (a total of $1,000 a month for both corporations) for a period of five years or for her life, whichever was shorter. The agreement so to pay was stated to be an inducement for Mr. Truscott to remain in the service of the employing corporation and in each agreement he promised to remain in the employer's service for as long as the employer desired to employ him. The right to receive these payments was community property.

During the years 1965, 1966, and 1967 the widow received $12,000 in each year from the employing corporations, the amount due her under the two contracts. The entire $12,000 annual payment was included in the widow's income tax return for each said year. In this action she seeks a refund of the entire income tax paid on the said $12,000 for each of the said years, 1965, 1966, and 1967.[2] She, in effect, claims that the inclusion of said payments as income was a result of a mistake of law on her part.

In the estate tax return filed for the decedent's estate, the executor included the right to receive income under both contracts as a part of the decedent's gross estate, valuing the said right, which was a right to receive a total of $60,000 if the widow remained living for five years, at a valuation of $55,205.22. Claiming an exclusion of half of that amount as the widow's share of the community property, the executor included the other half, $27,602.61, in the gross estate and paid the appropriate estate

tax thereon. This case does not involve any claim for refund of said estate taxes.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that her right to receive the contract payments is property which is entitled to a stepped-up basis under IRC § 1014. Plaintiff claims a $5,000 death benefit exclusion under IRC § 101 and a stepped-up basis of the fair market value of the right to receive payments as of the date of decedent's death, i. e. $55,205.22 as shown in the estate tax return. Adding the two together results in a claimed basis of $60,205.22. Since the payments made to Plaintiff totaled $60,000, an amount less than the basis as above computed, Plaintiff contends that none of the amounts received should be includable in her income tax return.

Plaintiff makes three separate legal contentions:

1. She is entitled to a stepped-up basis for the payments under IRC § 1014(a).

2. If § 1014(a) provides no independent right to a stepped-up basis of the entire payments received, the husband's one-half community property interest in the payments is entitled to a stepped-up basis under IRC § 1014(b) (1).

3. If § 1014(a) provides no independent right to a stepped-up basis of the entire payments, Plaintiff's community property half thereof is entitled to a stepped-up basis as being included within IRC § 1014(b) (6).[3] This claim is asserted independently and as being unaffected by the decision of the court as to whether § 1014 (b) (1) applies to the husband's half.

The government argues that IRC § 1014(a) gives no independent right to a stepped-up basis, that the right to a stepped-up basis is limited to situations

---

2. Although there were payments made in 1964, 1968, and 1969, the income tax for those years is not in issue in this case.

3. This Opinion does not deal with the status of the payments in question under § 1014(b) (9). Plaintiff's counsel asserts no right under (b) (9) in the brief and, at oral argument, confirmed that she sought no benefit under it.

within the specific categories defined in § 1014(b) and that no part of the payments falls within either § 1014(b) (1) or § 1014(b) (6). The government further argues that even if the Court finds that the instant right to receive moneys would fall within § 1014(b) (1) or § 1014(b) (6), the instant right is, nevertheless, not entitled to a stepped-up basis because it is income in respect of a decedent which, under § 1014(c), does not qualify for a stepped-up basis.

The relevant portions of IRC § 1014 (26 U.S.C. § 1014) are set forth below:

"§ 1014. *Basis of property acquired from a decedent.*

(a) *In general.*—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passes from a decedent shall * * * be the fair market value of the property at the date of the decedent's death * *."

"(b) *Property acquired from the decedent.*—For purposes of subsection (a), the following property shall be considered to have been acquired or to have passed from the decedent"

(1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;

\* \* \* \* \* \*

(6) * * * property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State * * * if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) or

section 811 of the Internal Revenue Code of 1939;"

\* \* \* \* \* \*

"(c) *Property representing income in respect of a decedent.*—This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691. \* \* \*"

### SUBSECTION (a)

██ Plaintiff's contention that subsection (a) of § 1014 is not limited by the specific categories defined in subsection (b), but rather that subsection (a) defines additional categories of property beyond those included in subsection (b), has apparently never been dealt with in any reported case. The wording of subsection (b) seems clearly to indicate that the 9 categories defined therein were intended to mark the limits of property acquired from a decedent or passing from a decedent as those terms are used in subsection (a).[4] The legislative history of the 1954 Internal Revenue Code would appear to support that conclusion. The Senate Report gave the following terse explanation of the relationship between subsections (a) and (b):

"The general rule is stated in the preamble to subsection (a) as applicable to property in the hands of a person acquiring the property from the decedent or to whom the property passed from the decedent * * *."

"Paragraphs (1) to (9) of subsection (b) describe the circumstances under which property is treated as having been acquired or having passed from the decedent." S.Rep.No. 1622, 83d Cong.2d Sess., 3 U.S.Code Cong. & Ad.News, p. 5066 (1954)

The Senate Report clearly implies that property must meet the definition of at least one of the 9 categories of subsection (b) before it can be considered as pass-

4. Particularly to be noted are the initial phrases of subsection (b) which read: "For the purposes of subsection (a) the following property shall be considered ██ * * *." The phrases link the two sections and suggests that (b) was specially designed to define the more general terms used in (a).

ing from or acquired from a decedent, and thus be eligible for a stepped-up basis under subsection (a). I so hold.

Petitioner relies on Stanley v. Commissioner of Internal Revenue, 338 F.2d 434 (9th Cir. 1964), but that reliance is misplaced. In *Stanley*, the taxpayer-widow attempted, on a theory not entirely applicable to our case, to acquire a stepped-up basis on the community property one-half of an installment obligation formerly owned by her and her deceased husband. The Circuit Court discussed very briefly some of the relationships between subsections (a) and (b). See 338 F.2d at 438. I read those comments in *Stanley* as saying merely that Congress, in defining what was meant by "property acquired from or passing from a decedent," in subsection (a) set up certain special definitional categories which would not ordinarily be included within the literal meaning of the term, and certain other definitional categories which would ordinarily be included in the literal meaning. There is no suggestion in the opinion that, for purposes of § 1014, the phrase "property acquired from or passing from a decedent" in subsection (a) was to have any meaning beyond the total of the 9 categories set forth in subsection (b).

### SUBSECTION (b) (1)

■ Subsection (b) (1) affords a stepped-up basis to property acquired by "bequest, devise, or inheritance * * from the decedent * * *." Plaintiff contends that her right to the decedent's one-half of the instant contract payments is a right which comes to her by "inheritance" from the decedent. But she cites no authority to support the contention. What authority there is, is against her position. It seems clear that property cannot be said to come from a decedent by "bequest, devise, or inheritance" unless it is part of the decedent's probate estate under the laws of the state of his domicile. 3A J. Mertens, Law of Federal Income Taxation, 25, 216–221 (Malone rev. 1968); see Treas.Reg. § 1.1014–2 (a) (1); cf. Wasserman v. Comm'r, 24

T.C. 1141 (1955); H.R.Rep. No. 1337, 83d Cong.2d Sess., 3 U.S.Code Cong. & Ad.News, pp. 4407–08 (1954).

■ In the instant case, it is Petitioner's burden, since she is the Plaintiff in this action and seeks to bring the interest in question within subsection (b) (1), to demonstrate that the decedent's one-half interest in these payments was part of the decedent's probate estate under California law. She has failed to make any such showing. To the contrary, her counsel conceded in oral argument that the contract right was in all probability not a part of the probate estate. Thus, Petitioner gains no benefit or right by virtue of subsection (b) (1).

### SUBSECTION (b) (6)

Petitioner contends that even if the entire contract right is not accorded a stepped-up basis by virtue of subsection (a), her half of the contract right is given a stepped-up basis by virtue of subsection (b) (6). She points out that since she is the surviving spouse, her one-half share of the community property contract right should be included within subsection (b) (6) since at least one-half of the entire community interest was included in determining the value of the decedent's gross estate for estate tax purposes.

■■ It must be conceded that Petitioner's argument would have some merit if one considers only the literal wording of subsection (b) (6). But the case law, particularly cases decided in this Circuit, appears to establish that in construing this subsection the Court must probe beyond the literal wording alone and must construe the statute to effectuate the basic legislative purpose underlying its enactment. E. g. Stanley v. Comm'r of Internal Revenue, 338 F.2d 434 (9th Cir. 1964). Our Circuit Court has held, with both clarity and emphasis, that the purpose of subsection (b) (6) is to afford the same treatment to income rights or other property in a community property state, insofar as stepped-up basis is con-

cerned, as would be afforded to similar rights or property in a non-community property state. Murphy v. Comm'r of Internal Revenue, 342 F.2d 356 (9th Cir. 1965); Stanley v. Comm'r, *supra*. See also Bath v. United States, 211 F.Supp. 368 (S.D.Tex.1962), aff'd 323 F.2d 980 (5th Cir. 1963).[5] Thus, it becomes appropriate to consider whether the instant income right would be given a stepped-up basis as to one-half thereof in a non-community property state.

It seems clear that under existing law, no part of such a contract right would be afforded a stepped-up basis in a non-community property state. In a non-community property state one-half of the income right in question would be subject to the marital deduction for estate tax purposes if the income right were given to the widow either by will or by the contract itself. But that one-half does not, and could never, get a stepped-up basis merely as a result of its qualifying for the marital deduction. To obtain a stepped-up basis in a non-community property state, on any part of the income right, the entire right would have to be shown to fall within subsections 1 through 5, or 8, or 9 of subsection (b), none of which subsections is affected by the existence or non-existence of a marital deduction.[6]

 Accordingly, in a community property state, a taxpaper should not be permitted to claim any benefit under (b) (6) for her half of the property unless the other half which passes from the deceased spouse gets a stepped-up basis under subdivisions 1 through 5, or 8, or 9. In the case at bar, as I have held *supra,* the decedent's half gets no stepped-up basis under either subdivision (a) or (b) (1), the only provisions upon which Plaintiff relies as to that half. I therefore hold that Plaintiff's half cannot obtain a stepped-up basis under (b) (6).

## SUBSECTION (c), INCOME IN RESPECT OF A DECEDENT

As heretofore stated, I hold that the income in question is not given a stepped-up basis in whole or in part by any provision of § 1014(a) or § 1014(b). There is a separate and alternative ground for granting judgment to the government, i. e. that the income in question is "income in respect of a decedent" under IRC § 691, and, thus, by virtue of § 1014 (c), is denied a stepped-up basis even if it falls within some provision of subsection (a) or (b).

There are a few decided cases that deal with payments paid by an employer after an employee's death to a widow or to the estate pursuant to a contract of employment (see e. g. Miller v. United States, 19 AFTR2d 830 (W.D.Tex.1967), aff'd per curiam 389 F.2d 656 (5th Cir. 1968); Bernard v. United States, 215 F.Supp. 256 (S.D.N.Y.1963), or to a custom of the employer (see e. g. Bausch's Estate v. Comm'r of Internal Revenue, 186 F.2d 313 (2d Cir. 1951)). Although the above opinions generally leave something to be desired in their fact statements and in the expression of the reasoning underlying the decision, their holdings are unanimous that such income is income in respect of a decedent under subsection (c). *Miller* and *Bernard, supra,* appear directly in point with the case at bar. No case to the contrary has been found where the income results from the services of the decedent and is paid by his employer.

Petitioner seeks to counter the force of these precedents by relying on the wording of Treasury Reg. 1.691(a)–1(b), which reads in relevant part as follows:

"In general, the term 'income in respect of a decedent' refers to those

---

5. The legislative history of subdivision (b) (6) likewise demonstrates unequivocally that this was the purpose underlying it. E. g., S.Rep.No.1013, 80th Cong.2d Sess., 2 U.S.Code Cong.Serv. p. 1191 (1948).

6. Subsection 7 is unavailable in non-community property states. It applies only to community property.

*amounts to which a decedent was entitled* as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year under the method of accounting employed by the decedent." [Italicizing supplied]

Petitioner relies particularly on the italicized language, the concept of the decedent being "entitled" to the income. Petitioner argues that in the instant case the decedent was never, and could never have been, "entitled" to the income in question. She relies on three cases as establishing a rule of law that without such entitlement the income cannot be considered as income in respect of a decedent. These cases are Comm'r of Internal Revenue v. Linde, 213 F.2d 1 (9th Cir. 1954); Trust Company of Georgia v. Ross, 392 F.2d 694 (5th Cir. 1967), and Keck v. Comm'r of Internal Revenue, 415 F.2d 531 (6th Cir. 1969). The reliance on these cases is illfounded. None of them establish a rule of law as claimed. All three involve property rather than services.

*Linde, supra,* is a particularly weak reed upon which to lean. It holds that the income in question was income in respect of a decedent. It involved a decedent grape grower who belonged to a cooperative. The cooperative accepts grapes from numerous growers, processed them into wine, marketed the wine, and distributed net proceeds to the growers. On the date of death, the decedent's grapes had been turned over, but the wine had not yet been sold. Thus, the decedent, on the date of death, had no enforecable right to the income. In affirming a Tax Court judgment for the government, the Court observed that the proceeds in question, when they became payable, represented compensation for the decedent's economic efforts even though they were only expectancies and the rights were unfixed at the time of his death. Thus, *Linde* announces no entitlement test. Moreover, it emphasizes a factor for determining income in respect of a decedent which is most

strongly present in the instant case, that the income in question resulted from the economic efforts of the decedent.

In *Trust Company of Georgia, supra,* the decedent, before his death, had entered into a binding contract for the sale of some corporate stock. On the date of death the contract had no unfulfilled contingencies although the transfer had not yet taken place and no payment had been received. Payment was received later by the estate. The 5th Circuit Court affirmed judgment in favor of the government, holding that the estate was required to pay the income tax due on the purchase price as income in respect of a decedent.

In the opinion the 5th Circuit Court apparently declined to go along with the 9th Circuit in regarding economic effort as the most decisive factor. The 5th Circuit notes that although it may be pertinent to determine whether the income was due to the decedent's economic efforts, that is not necessarily conclusive. The 5th Circuit follows this discussion by language which seems to adopt a requirement that the decedent be shown himself to have been entitled to the income. 392 F.2d at 695–696.

But, it must be noted that whether or not the decedent, rather than his widow or estate, was entitled to the income was not an issue in the case at all. The question the Court confronted was whether or not the right to the proceeds had matured on the date of death, whether the right to receive income was conditional or unconditional on that date. Practically the entire opinion is devoted to that question. The Court adopts a liberal test in favor of the government, holding that if there was a contract right to the income as of the moment of death, with no unfulfilled contingencies, it was enough to make the income income in respect of a decedent even though the actual transfer of the securities was long delayed beyond the date of death. If the same principles were applied to the case at bar, it is clear that the instant income was likewise income in respect of a decedent. As of the moment of death,

there were no unfulfilled contingencies whatsoever, even though the first payment to the widow would not become due for at least one month.[7]

In *Keck, supra,* the 6th Circuit seems to emphasize the same factors that the 5th Circuit did in *Georgia Trust,* but reaches a different result because the facts were different. In *Keck* the deceased had owned stock in three corporations which had been liquidated after his death, and the IRS sought to tax the proceeds of the liquidation as income in respect of a decedent. Before his death, the corporations had entered into an agreement for the sale of their assets which was contingent upon the approval of the ICC. But, as of the date of death, there had been no such approval and no sale; moreover there had been no binding agreement between the shareholders, or between shareholders and the corporation, to liquidate the corporations after the sale of assets. In holding the income to be income in respect of a decedent, the Tax Court pointed out that all of the significant activity in connection with the sale of assets had been accomplished prior to the death. But the Circuit Court reversed, citing *Trust Company of Georgia,* and particularly the 5th Circuit's aforesaid language therein on entitlement. As I read the case, *Keck* holds only that because there was no contractual commitment even to liquidate the corporations and because the sale of assets was subject to the unfulfilled contingency of ICC approval, the right to the income in question, i. e. the proceeds of liquidation, had not matured

at death and was not sufficiently unconditional as to be called income in respect of a decedent.

■ It is submitted that where one is dealing with post-death payments attributable to the personal services of a decedent and payable upon his death, the right to receive the money has certainly matured and the decedent's entitlement to the payments is simply not relevant. If, however, decedent's entitlement is a *sine qua non* of income in respect of a decedent, I submit that such entitlement could be found under the facts of the case at bar. The decedent here bargained for these payments in return for his personal services and for his remaining employed up to the date of his death. The consideration for those payments flowed entirely from him. He could have directed the payments to any person or entity he chose. He directed that they be paid to his widow, the contract being in essence a third-party beneficiary contract. Under the circumstances, with the decedent having furnished all of the consideration and economic benefit, it would be unrealistic in the extreme to hold that the income in question is not income in respect of a decedent, because the decedent chose to have it payable to someone other than himself or his estate. In every economic sense the decedent was the person "entitled" to the income. I conclude that the payments in question are income in respect of a decedent and, by virtue of § 1014(c), are ineligible for a stepped-up basis.

7. The 5th Circuit, which decided *Georgia Trust,* appears to agree that the facts of the instant case would meet its standards. In the course of its opinion in *Georgia Trust,* the Court cites Bernard v. United States, 215 F.Supp. 256 (S.D. N.Y.1963), which, as noted *supra,* is directly in point with the case at bar. It describes *Bernard* as a case in which "payments [were] made after death pursuant to rights created by the decedent during his lifetime," and goes on to say that *Bernard* and its reasoning are "in accord" with the entitlement language as set forth in *Georgia Trust.* Moreover,

just two weeks after the 5th Circuit decided *Georgia Trust,* it handed down its affirmance, per curiam, in Miller v. United States, 19 AFTR 2d 830 (W.D. Tex.1967), aff'd 389 F.2d 656 (5th Cir. 1968). Judge Tuttle sat on both panels. In its affirming opinion in *Miller,* the 5th Circuit noted its recent decision in *Georgia Trust* as having dealt with a "similar problem" of income in respect of decedents, and went on to say that the "history and analysis of Section 691, and cases interpreting it demonstrate the correctness of the trial court's judgment here."

This Memorandum shall constitute the Court's findings of fact and conclusions of law. A Judgment will be filed contemporaneously herewith.

For the reasons above stated, it is ordered as follows:

1. The Plaintiff's Motion for Summary Judgment is denied.

2. The Defendant's Motion for Summary Judgment is granted.