**CONNECTICUT NATIONAL BANK, as Executor of the Will of John W. Leahy, Deceased, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 1246, Docket 90–6310.**

United States Court of Appeals, Second Circuit.

Argued May 6, 1991.

Decided June 28, 1991.

Constantine P. Ralli, New York City (John S. Kinzey, Robert A.N. Cudd, LeBoeuf, Lamb, Leiby & MacRae, New York City, of counsel), for plaintiff-appellant.

Jonathan S. Cohen, Washington, D.C. (Shirley Peterson, Asst. Atty. Gen., Gary R. Allen, Kimberly S. Stanley, Dept. of Justice, Stanley A. Twardy, Sr., U.S. Atty., Washington, D.C., of counsel), for defendant-appellee.

Richard B. Covey, New York City (Carter, Ledyard & Milburn, New York City, of counsel), for amicus curiae Trust Div. of American Bankers Ass'n.

Before PRATT, MINER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Connecticut National Bank ("executor" or "CNB"), the executor of John W. Leahy's ("John's") estate, appeals from a judgment entered in the United States District Court for the District of Connecticut (Peter C. Dorsey, *Judge*), finding that the estate was not entitled to a $1,485,882 income tax refund for alleged overpayments of capital gains taxes made to the United States government for the tax year 1982. This appeal primarily concerns whether, pursuant to 26 U.S.C. § 1014 (1988), an estate that holds property in trust for the benefit of an individual "acquires" anything from the individual upon his or her death, such that the estate may use a "stepped-up basis" to value sales of trust property made after the individual's death. According to § 1014(a), one who acquires property from a decedent is entitled to use the property's fair market value on the decedent's date of death as a basis for valuing sales of the property made subsequent to the decedent's death. The district court, reading § 1014(a) narrowly, concluded that an estate that holds property in trust for the benefit of a decedent does not

acquire anything from the decedent upon her death. Accordingly, the court determined that John's estate, acting as trustee for a marital trust established for the benefit of John's wife Gladys, was not entitled to use a stepped-up basis determined as of the time of Gladys' death to calculate the gain on the sale of marital trust property concluded after her death. Therefore, the court determined that John's estate was not entitled to an income tax refund and granted the government's motion for summary judgment.

For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings.

## BACKGROUND

On March 28, 1975, John Leahy died, leaving an estate valued at $7,213,604. By the terms of his will, John divided his residuary estate into a marital trust and a residuary trust. Each of the trusts named his wife, Gladys Leahy, as its beneficiary, giving her an income interest in both trusts and a general power of appointment over the corpus of the marital trust. During the administration of John's estate, his executor left each of the trusts unfunded.

Gladys died approximately five and a half years after John, in November 1981. By will, she exercised her general power of appointment over the marital trust in favor of an *inter vivos* trust established for the benefit of her three grandchildren. Although the assets of John's estate had substantially increased in value by the time of Gladys' death—his estate had a fair market value of approximately $28,184,342—John's estate had not made any distributions to either the marital or the residuary trust before Gladys' death.

In June 1982, John's estate sold all of its stock in an organization known as Danbury Fair, Inc. ("Danbury Fair"). The net proceeds on the sale of this stock were $25,-399,454. To compute the amount of the capital gain made on the sale, John's estate used a "basis" of $1,779,993, which equalled the value of the Danbury Fair stock at the time of John's death. Accordingly, in its Fiduciary Income Tax Return for the fiscal year ending December 31, 1982, John's estate reported a capital gain of $23,619,521 and paid a $4,719,784 capital gains tax. One month after John's estate sold the stock, it distributed $2,563,596 to the marital trust.

In August 1982, Gladys' estate filed a Federal Estate Tax Return which included as an asset the $2,563,596 from the marital trust, treating it as a pecuniary, or fixed, bequest from John. However, the Internal Revenue Service ("IRS") concluded that the bequest from John to the marital trust was not a pecuniary bequest, but was instead a fractional share bequest that entitled Gladys to a proportional share in John's estate's residuary assets. Thus, the IRS claimed that the appreciation in value in John's estate of the proportional share of the marital trust—from the time of John's death to Gladys' death—was includable in Gladys' estate for estate tax purposes. At the conclusion of the IRS audit of Gladys' estate on April 4, 1985, the IRS determined that the total value of the marital trust includable in Gladys' estate was $8,863,596, approximately $6,300,000 more than the amount which Gladys' estate initially included on its return. Consequently, Gladys' estate was charged an additional $3.4 million in federal estate taxes.

Almost one year after the audit was completed, John's estate filed a claim with the IRS for a $1,485,882 refund for fiduciary income tax that it allegedly overpaid for the 1982 tax year. Essentially, John's estate contended that because the government had calculated Gladys' estate tax by attributing to her estate $8,863,596 of the property held for the marital trust in John's estate, John's estate was permitted to use a stepped-up basis, *i.e.* the value of the property at the time of Gladys' death, to calculate its capital gain tax liability made on sales of this property during 1982. Specifically, the estate claimed that since the IRS employed a legal fiction to include the property in Gladys' estate for estate tax purposes, (*i.e.* that although Gladys did not possess the property, she was its owner), it should use the same legal fiction when applying § 1014. The Director of the

IRS rejected this argument and denied the estate's request for a refund.

CNB then initiated the underlying action against the United States government in the United States District Court for the District of Connecticut, seeking a $1,485,-882 tax refund. Both CNB and the government moved for summary judgment. The district court concluded that John's estate was not entitled to use a stepped-up basis in calculating its capital gains for 1982. Thus, the district court granted the government's motion for summary judgment. This appeal followed.

## DISCUSSION

Pursuant to 26 U.S.C. § 1014, an individual who "acquires" property from a decedent may use as a basis for that property "the fair market value of the property at the date of the decedent's death," provided the property is "not sold, exchanged, or otherwise disposed of before the decedent's death." 26 U.S.C. § 1014(a). On appeal, the government contends that, at all times, John's estate possessed the property contained in the marital trust, and therefore never "acquired" anything from Gladys' estate. Consequently, the government claims that § 1014(a) does not permit John's estate to use the value of the marital trust property calculated as of the date of Gladys' death as a basis in determining capital gains made on sales of this property in 1982. We disagree.

In this case, the government did not apply a consistent definition of property when assessing taxes against John's and Gladys' estates under the income tax and estate tax schemes. The marital trust was established by will as an irrevocable trust in which Gladys possessed an income interest and a general power of appointment. It is undisputed that as a result of this general power of appointment, the marital trust property was includable in Gladys' estate for estate tax purposes, even though John's estate had not yet transferred the assets from the marital trust to Gladys at the time of her death. *See* 26 U.S.C. § 2041 (1988) (allowing property over which decedent had a general power of appointment to be included in decedent's gross estate). Thus, Gladys was, for estate tax purposes, the beneficial owner of the marital trust. Indeed, for this very reason, her estate paid an additional $3.4 million in estate taxes. Once Gladys died, her appointee—the *inter vivos* trust—acquired an entitlement to the property. Essentially, the government's position in this case is that although Gladys may be considered to have been the beneficial owner of the property for estate tax purposes, as far as income tax purposes are concerned, her designation as the property's owner for estate tax purposes is of no moment. We reject this view. *See* H.R.Rep. No. 1380, 94th Cong., 2nd Sess. 36, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2897, 3356, 3390 ("For the purposes of determining what property is given a stepped-up basis, the test is generally whether the property was included in the gross estate of the decedent.").

Although CNB, as executor of John's estate and trustee of the marital trust, is responsible for liquidating John's estate and managing the marital trust property, CNB, in its representative capacity, does not possess any real ownership interest in the property—it possesses legal title to the trust, but nothing more. Because John's estate did not retain any property rights in the marital trust property, John's estate may be considered, for purposes of this argument, as managing or holding the marital trust on behalf of the trust's beneficiaries. *See Brewster v. Gage*, 280 U.S. 327, 334, 50 S.Ct. 115, 116, 74 L.Ed. 457 (1930) ("Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue.").

We are mindful that it is John's estate, as a fiduciary, that *actually* is charged with paying, and has in fact paid, the capital gains tax on income derived from sales of undistributed stock held by the marital trust. However, we are also aware that any such tax payments are made from the

assets of the two trusts. Therefore, the tax burden, in reality, falls on the trust beneficiaries to whom the corpus of the trusts will eventually be distributed. Indeed, the government admits in its brief that "whether the ultimate tax burden was to be paid by Gladys' estate or by John's estate, the same three individuals (Gladys' beneficiaries) would be affected." Accordingly, for purposes of this argument, it is proper to view John's estate as, in essence, holding and managing the trust on behalf of Gladys' appointee. Consequently, whether John's estate is permitted to use a stepped-up basis under § 1014 turns on whether Gladys' appointee may use such a stepped-up basis to calculate capital gains on sales from the marital trust made subsequent to Gladys' death.

Title 26, Section 1014(a) of the United States Code provides:

> [T]he basis of property in the hands of a person *acquiring* the property from a decedent or to whom the property *passed from* a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be—
>
> (1) the fair market value of the property at the date of the decedent's death ...

26 U.S.C. § 1014(a) (emphasis added). The words "acquiring" or "passed from" as used in § 1014(a) are terms of art that refer to figurative rather than literal transfers. Indeed, it is clear from the wording of Section 1014(b), which enumerates ten situations in which property is deemed to be "acquired" or "passed," that Congress did not intend § 1014(a) to be read literally. *See* 26 U.S.C. § 1014(b); *see also* Mertens, *Law of Federal Income Taxation* § 21.33 (1991) (*"Mertens"*). Section 1014(b) brings within the purview of subsection (a) some types of transfers that would not ordinarily fall within the bounds of that subsection if not specifically included. *Stanley v. Commissioner*, 338 F.2d 434, 438 (9th Cir.1964). Section 1014(b) provides in pertinent part:

> (b) Property acquired from the decedent—For purposes of subsection (a), the following property *shall be considered* to have been acquired from or to have passed from the decedent:
>
> (4) Property passing without full and adequate consideration under a general power of appointment exercised by the decedent by will.

26 U.S.C. § 1014(b) (emphasis added). The highlighted language itself indicates that § 1014(a) is to be liberally construed.

In this case, Gladys exercised a general power of appointment over the marital trust, directing that on her death the corpus should be passed to the *inter vivos* trust established for the benefit of her grandchildren. Thus, under § 1014(b)(4), the *inter vivos* trust, as Gladys' appointee, may use a basis calculated at the time of Gladys' death to value any capital gains *it* makes on sales of marital trust property concluded after Gladys' death. *See* 26 U.S.C. § 1014(b)(4). The government concedes this. The government argues, however, that if the marital trust property is not distributed to Gladys' appointee before a sale is made, a stepped-up basis cannot be used to value the transaction, because the appointee has not yet "acquired" the property from the decedent. We find the government's reading of § 1014 to be overly formalistic. Even though Gladys' appointee did not "hold" the Danbury Fair stock at the time it was sold, the appointee did possess a beneficial interest in the stock that it *acquired* from Gladys. Because we look upon John's estate as holding and managing the property for the benefit of Gladys' appointee, we believe that John's estate was entitled, derivatively, to use a basis calculated at the time of Gladys' death in valuing sales of marital trust assets made after Gladys' death.

To hold otherwise would produce an anomalous result. Allowing Gladys' appointee to use one basis if the property was distributed prior to sale and, in contrast, mandating that John's estate, as trustee, use a different, lower, basis for the same property if the property has not been distributed prior to sale, clearly results in an inconsistent application of § 1014. Indeed, such an application of the statute contravenes the Treasury regulations interpreting § 1014.

These regulations establish a uniform basis rule for property acquired by inheritance:

> (a) *In general.* (1) The basis of property acquired from a decedent, as determined under section 1014(a), is uniform in the hands of every person having possession or enjoyment of the property at any time under the will or other instrument or under the laws of descent and distribution. The principle of uniform basis means that the basis of the property (to which proper adjustments must, of course, be made) will be the same, or uniform, whether the property is possessed or enjoyed by the executor or administrator, the heir, the legatee or devisee, or the trustee or beneficiary of a trust created by a will or an inter vivos trust.

Treas.Reg. Section 1.1014–4(a)(1) (1991); *see Mertens,* Comm. § 1014(b):3 (1991) ("Interests frequently are split horizontally, as in the case of the trustee and beneficiaries of a trust.... [i]n such cases the Supreme Court has sustained and the Commissioner applies a 'principle of uniform basis.' "). Accepting the government's argument would allow the IRS to assign marital trust property a different basis depending on whether the property had been distributed to the beneficiary or had remained in trust. Such a result would clearly contravene the intent of the uniform basis rule. Basis should not be affected merely because John's estate delayed in distributing the marital trust property. Indeed, the government's position affords the trustee considerable latitude to manipulate its distributions of estate property in order to avoid taxes.

The legislative history surrounding § 1014 indicates that, in part, Congress enacted that section in an attempt to minimize the tax consequences of decisions made by executors and trustees concerning when to distribute trust property. *See, e.g.,* S.Rep. No. 1622, 83rd Cong., 2nd Sess., 423–24, *reprinted in* 1954 Code Cong. & Admin.News 4629, 4740–41. For example, Congress adopted the word "acquiring" in order to ensure that property derived from an estate was uniformly valued at the date of the decedent's death. *See id.* Hinging a basis calculation on whether an executor has chosen to distribute estate property would create the ability to avoid taxes by properly timing distribution of trust assets. Such a rule would plainly violate congressional intent. On the other hand, if estate property is assigned the same basis regardless of whether it has been distributed, a fiduciary's decision to distribute property to a beneficiary will be devoid of tax consequences as far as basis is concerned. This result comports with congressional intent. *See* Treas.Reg. § 1.1014–4(a)(2) (1991) (Congress did not intend "to recognize as gain any element of value resulting solely from the circumstance that the possession or enjoyment of the taxpayer was postponed."); *cf. Mertens* Comm. § 1014(f):1.

Accordingly, for the reasons discussed above, we believe that the government's narrow reading of § 1014 contravenes the intent of Congress and the language of the section, as well as the regulations interpreting it. Thus we conclude that John's estate was entitled to use a stepped-up basis calculated at the time of Gladys' death to value capital gains made on the sale of property in the marital trust during the tax year 1982.

Finally, the government argues that this Court should sustain the district court's decision under the doctrine of equitable recoupment. Because the district court did not address this argument, we remand the case to the district court for consideration of this issue. *See Eastman Mach. Co. v. United States,* 841 F.2d 469, 474 (2d Cir. 1988); *Musso v. Hourigan,* 836 F.2d 736, 742 (2d Cir.1988).

## CONCLUSION

Based on the foregoing, the judgment of the district court is reversed and the case is remanded for further proceedings.