**Curtis G. HOLT, Jr., and Pauline Johnson–Holt, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 96–165T, 96–356T.**

United States Court of Federal Claims.

Nov. 10, 1997.

## OPINION

WIESE, Judge.

Pauline Johnson–Holt and her first husband, Charley Johnson (now deceased), jointly held, as community property, several mortgage notes received in conjunction with the sale, in 1986, of three condominium apartment units which the Johnsons then owned. The Johnsons elected to report the gains realized from these sales pursuant to the installment method authorized by 26 U.S.C. § 453 (1994).[1]

The question that comes up in this tax refund suit is whether, as a result of the death of Charley Johnson in 1987 and the subsequent transfer of his one–half interest in the mortgage notes to his surviving spouse, those notes became eligible for a

---

1. The installment method of reporting realized gain from an installment sale of property allows taxpayers to pay the taxes due on the sale as the proceeds are received each year rather than as a lump sum in the year of the sale.

step–up in basis pursuant to section 1014 of the Tax Code, 26 U.S.C. § 1014 (1994).

The contention urged here is that such a step–up in basis is appropriate. Based on that contention, plaintiffs maintain they are due a refund in federal income taxes because, in the years immediately following Charley Johnson's death, Mrs. Johnson failed to take that step–up into account in determining the amount of gain identifiable in the payments being received under the installment notes. That is, she continued to report as taxable gain the difference between the original cost of the condominium units and the amounts realized upon their sale.

The case is now before the court on defendant's motion for summary judgment and plaintiffs' cross–motion for summary judgment. The matter has been fully briefed and oral argument was held on October 2, 1997. We decide in defendant's favor.

### FACTS

In 1986, Charley Johnson and Pauline Johnson–Holt ("the Johnsons") owned three condominium apartment units at 666 West Olympic Place, Seattle, Washington. The condominiums were held as community property under Washington law. The Johnsons sold all three units between late May and early July, 1986.

█ The purchasers of each condominium unit made a down payment, signed a promissory note for the balance of the purchase price, and gave the Johnsons a deed of trust to secure the note. The gain that the Johnsons realized from these three sales totaled $265,380. The couple elected to report that gain on their joint tax return pursuant to the installment method set out at 26 U.S.C. § 453.

Mr. Johnson died testate in 1987. After her husband's death, Mrs. Johnson–Holt continued to receive installment payments and to report the gain included in those payments in accordance with the Johnsons' earlier in-

stallment method election. By October 1993, all three promissory notes had been paid in full.

On November 10, 1994, Mrs. Johnson–Holt filed amended tax returns for the 1988 and 1989 tax years. On the same day, she and her second husband, Curtis G. Holt, Jr., filed amended returns for their 1990 through 1993 joint tax returns. All of the amended returns sought refunds based on the contention that, after Mr. Johnson's death, the taxpayers had erroneously included in gross income (as realized gain) the installment payments received from the 1986 condominium sales.

The Internal Revenue Service ("the IRS") disallowed, for lack of timeliness, plaintiffs' refund claims for tax years 1988 through 1990. By contrast, the refund claims for tax years 1991 through 1993, being timely, were allowed. Approximately nine months later, however, the IRS informed the Holts, by letter, that the 1991–1993 refunds had been erroneously allowed. The Holts were advised of the reopening and disallowance of the $22,956 refund claim for the tax year 1993. The IRS's communication further noted that, although the refund claims for tax years 1991 and 1992 were also erroneous, those years would not be reopened "due to the statute of limitations."

Plaintiffs paid under protest the amount demanded and subsequently sued here for a refund of their 1993 income taxes. Additionally, by way of a separate action that was later consolidated with their 1993 refund claim, plaintiffs also asserted entitlement to a refund for the years 1988 through 1990.[2] Since the merits of the controversy center on the 1993 tax year, we begin our discussion with that year's refund claim.

### DISCUSSION

#### The 1993 Tax Year

Subsection 1014(a) of the Tax Code sets out as a general rule that the basis of proper-

---

2. The refund claims for the 1988 through 1990 tax years were filed here on March 25, 1996, by Pauline Johnson–Holt acting in her individual taxpayer capacity. Then, on June 19, 1996, Pauline Johnson–Holt and Curtis G. Holt, Jr., filed a claim for the refund of 1993 income taxes. Pur-

suant to plaintiffs' motion, the suits were consolidated and recaptioned as now appears. Curtis G. Holt thus appears as a plaintiff in this action because the plaintiffs filed a joint income tax return for 1993.

ty acquired or passed from a decedent is its fair market value at the time of the decedent's death, if such property was not sold or exchanged by the recipient prior to the decedent's death. Subsection (b) of the statute enumerates the various properties to which the section applies, that is, the properties that "shall be considered to have been acquired from or to have passed from the decedent." Finally, subsection (c) notes an exception to the statute's otherwise expansive application: "This section [referring to the entirety of section 1014] shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691."

It is with this last cited subsection, 1014(c), that the argument begins. As noted, that subsection excludes from the operation of section 1014 those transfers involving property that, in the hands of a decedent, recognize a right to the receipt of money or property. Installment obligations that were reportable by the decedent on the installment method allowed under section 453 are considered an item of income in respect of a decedent. 26 U.S.C. § 691(a)(4) (1994). Thus, on the face of it, plaintiffs would not be entitled to the step-up in basis authorized by subsection 1014(a) because the mortgage notes at issue here would be ineligible for such treatment.

Plaintiffs, however, argue against this result. They maintain that they acquired the mortgage notes for the same purpose for which they had acquired the condominium units—that is, as investment properties to be disposed of when market conditions favored a sale. Thus, they describe the notes as investment assets rather than income instruments and this distinction, they say, warrants our treating the notes as capital assets entitled to a step-up in basis.

Even accepting, for argument's sake, the legitimacy of the distinction plaintiffs urge, it cannot help them. The condominium units were sold at a gain and that gain was income which, pursuant to the recipients' election, became reportable in installments. This right to an ongoing flow of payments pursuant to the installment notes is clearly an item of income in respect of a decedent under 26 U.S.C. § 691(a)(4). Accordingly, the transfer of decedent's interest in the notes carries with it no right to a step-up in the basis of those notes.

Moving on, plaintiffs next contend that even if the decedent's one-half interest in the community property does not qualify for a step-up in basis, nevertheless, the statute does sanction a step-up in basis for the surviving spouse's half interest. The argument relies upon the text of subsection 1014(b)—the subsection which enumerates the various properties that "shall be considered to have been acquired from or to have passed from the decedent" and which therefore qualify for a step-up in basis pursuant to the general rule set out in 1014(a). Among the listed properties is:

> property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under the community property laws of any State ... if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate....

26 U.S.C. § 1014(b)(6). As said, plaintiffs rely on this provision to make the case that Mrs. Johnson-Holt's one-half interest in the installment notes qualifies for a step-up in basis.

Standing alone, the quoted text plainly supports plaintiffs' position: the surviving spouse's one-half interest in community property, even though not actually passing through the decedent's estate, is defined, for basis purposes, as an interest acquired from the decedent. By virtue of this fiction then, the entirety of the community property achieves a step-up in basis—one-half by actual transfer from the decedent (as recognized in 1014(b)(1)); the other half (the surviving spouse's interest) pursuant to the constructive transfer recognized in 1014(b)(6).

The question remains, however, whether the statute, when read as a whole, can support the interpretation plaintiffs espouse. We think not. The trouble with plaintiffs' argument lies in the point previously discussed, namely, the inapplicability of section

1014 to property that constitutes income in respect to a decedent. The way we read the statute, property, such as installment notes, does not come within the framework of the statute—"[t]his section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent"— and thus there is no textual foundation for engaging the various property transfers catalogued in subsection 1014(b). Simply put, subsection 1014(b) cannot be invoked when the entire section of which it is a part is expressly declared to be inapplicable to property that, in the hands of a person acquiring such property, must be treated as income in respect of a decedent.

Nor is it possible to escape this conclusion by asserting that the surviving spouse's separate interest in the community property is not, in fact, income in respect of a decedent. That assertion, while objectively correct, ignores the organizing principle of the statute: that for purposes of permitting a step–up in basis, the surviving spouse's separate interest is recharacterized as an interest that "shall be considered to have been acquired from or to have passed from the decedent." § 1014(b). Given this statutory scheme, one cannot, on the one hand, invoke the benefit of a fictional transfer under 1014(b)(6) and the step–up in basis that transfer supports and, on the other hand, disregard the limitations that the statute places upon such transfers. In short, property that, in the hands of a decedent, represented a right to the receipt of income must be regarded as retaining that character in the hands of a transferee. Our conclusion therefore is that subsection 1014(b)(6) does not apply to plaintiffs' separate interest in the community property. To the same effect, see *Stanley v. Commissioner*, 338 F.2d 434 (9th Cir.1964) and *Johnson v. United States*, 64–2 U.S. Tax Cas. (CCH) ¶ 9655, 1964 WL 12355 (N.D.Tex.1964).

■ Another argument that plaintiffs present is the contention that the IRS acted contrary to established policies and procedures in reopening the 1993 tax year and reclaiming the refund previously allowed for that year. In support of this point, plaintiffs refer us to Revenue Procedure 94–68, 1994–2 C.B. 803. This revenue procedure, they say, expresses an IRS policy against the reopening of closed cases absent certain defined circumstances none of which, plaintiffs maintain, are present here.

Assuming for argument's sake that the guidelines set out in the referenced procedure could, in fact, be enforced against the IRS, we nevertheless see no basis for charging the IRS with a transgression of those guidelines. The cited revenue ruling recognizes the appropriateness of reopening a closed year when, among other enumerated conditions, there exist "circumstances . . . that indicate [a] failure to reopen would be a serious administrative omission." 1994–2 C.B. at 804.

This requirement was met here. The failure to recover a refund whose allowance, in the first instance, was incorrect as a matter of law, would amount to a serious administrative omission.

*The 1988 Through 1990 Tax Years*

In addition to their claim for a refund of 1993 income taxes, plaintiffs have also brought a claim for the refund of income taxes for the years 1988 through 1990. In this refund claim, plaintiffs reassert a position which they had first presented at the administrative level following the IRS's initial allowance of tax refunds for the years 1991 through 1993. The argument which plaintiffs put forward then—and which they endeavor to advance again here—is that the IRS, having allowed their claims for refund for 1991–1993, was obliged to grant refunds for the years 1988–1990 as well—this, in order to assure consistency in the tax treatment accorded to the basis of the installment notes.

Whatever merit this argument may once have held, it plainly deserves no consideration now given the IRS's change in position regarding plaintiffs' right to a refund for the years 1991–1993. The inconsistency in tax treatment on which plaintiffs' argument depends simply does not exist.

## CONCLUSION

For the reasons stated in this opinion, defendant's motion for summary judgment is granted and plaintiffs' cross–motion is de-

nied. The Clerk is directed to dismiss the complaints for lack of merit.