**ESTATE of Haakon K. NILSSEN, Northwestern National Bank of Minneapolis, William E. Mudge and David B. Stark, Executors and Muriel F. Nilssen, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 4–69 Civ. 268.

United States District Court, D. Minnesota, Fourth Division.

Jan. 29, 1971.

Dorsey, Marquart, Windhorst, West & Halladay, by Paul G. Zerby and William Hempel, Minneapolis, Minn., for plaintiffs.

R. C. Ackerman, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant.

NEVILLE, District Judge.

The facts of this case are not in dispute. The question presented by cross motions for judgment is whether a surviving widow's right to receive monthly payments for life and while unmarried pursuant to an employment contract entered into with a corporate employer by her deceased husband providing continuing payments to his widow after his death should be treated as property acquired from a decedent within the meaning of 26 U.S.C. § 1014(b) or as income in respect of a decedent within the meaning of 26 U.S.C. § 691(a).

On January 28, 1959, Haakon K. Nilssen entered into an employment contract with George A. Clark and Son, Inc. (Clark) under the terms of which Clark agreed to pay Mr. Nilssen not less than $54,000 annually during the term of his active employment with the company. If he remained with the company until retirement and rendered certain services after retirement he was to be paid $4,500 a month for the remainder of his life. If his wife survived him, she was to receive monthly payments of $2,250 for the remainder of her life, provided

that in the event of her remarriage the payments would cease three months thereafter. The agreement to make these payments was stated to be an inducement for Mr. Nilssen to continue in Clark's employ in light of his past and potential value to the employing corporation.

Nilssen died on October 28, 1963, while still in the active employment of Clark. In the estate tax return filed for his estate, the executor included the right to receive income under his contract with Clark, at a valuation of $245,503 computed pursuant to the provisions and actuary tables found in Regs. #20.2031–7. Pursuant to the provisions in the decedent's contract, monthly payments were received totaling $4,500 in the year of the decedent's death and $27,000 in each of the following two years. In reporting this income, the widow treated her right to receive payments as "property acquired from a decedent", and sought to amortize its accepted Federal Estate Tax value ($245,503) as a basis over a period equal to her starting date unmarried life expectancy. Accordingly, in her joint return for 1963, and her individual returns for 1964 and 1965, she excluded 75.2499% of the payments she received under the contract. The defendant completely disallowed the widow any basis in or for the contract, and assessed additional federal income taxes together with interest on those portions of the contract payments excluded in her income tax returns. These assessments were paid, and the present action arises from a denial of timely filed claims for refund.

Plaintiffs contend that the widow's right under the employment contract, valued at its fair market value at the time of her husband's death, was taxable to his estate under section 26 U.S.C. § 2039, and accordingly falls within the definition of "property acquired from a decedent" set out in § 1014(b) (9). Plaintiffs in effect are attempting to treat the widow's right under the employment contract in some respects as though it were a capital asset, excluding from the widow's income the date of death fair market value thereof, though regarding the excess of payments received over such assumed stepped up basis as ordinary income rather than as capital gain.[1]

1. The applicable provisions of the Internal Revenue Code are as follows:

SEC. 1014. *Basis of property acquired from a decedent.*

(a) *In general.*—Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.

(b) *Property acquired from the decedent.*—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

\* \* \* \* \*

(9) In the case of decedents dying after December 31, 1953, property ac-

quired from the decedent by reason of death, form of ownership, or other conditions (including property acquired through the exercise or non-exercise of a power of appointment), if by reason thereof the property is required to be included in determining the value of the decedent's gross estate under chapter 11 of subtitle B or under the Internal Revenue Code of 1939. In such case, if the property is acquired before the death of the decedent, the basis shall be the amount determined under subsection (a) reduced by the amount allowed to the taxpayer as deductions in computing taxable income under this subtitle or prior income tax laws for exhaustion, wear and tear, obsolescence, amortization, and depletion on such property before the death of the decedent. Such basis shall be applicable to the property commencing on the death of the decedent. This paragraph shall not apply to—

(A) annuities described in section 72;

\* \* \* \* \*

The defendant contends that regardless of whether the contractual right to the payments was properly taxable under section 2039, the payments themselves are "income in respect of a decedent"

within the meaning of 26 U.S.C. § 691; that by reason of the express exclusion contained in section 1014(c) the right to receive such payments is not properly considered "property acquired from a

(c) *Property representing income in respect of a decedent.*—This section shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691. SEC. 691. *Recipients of income in respect of decedents.*

(a) *Inclusion in Gross Income.*—

(1) *General rule.*—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period (including the amount of all items of gross income in respect of a prior decedent, if the right to receive such amount was acquired by reason of the death of the prior decedent or by bequest, devise, or inheritance from the prior decedent) shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; or

(C) the person who acquires from the decedent the right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right.

\* \* \* \* \*

(3) *Character of Income Determined by Reference to Decedent.*—The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent or any person who acquired such right by reason of the death of the decedent, or by bequest, devise, or inheritance from the decedent, as if it had been acquired by the estate or such person in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate or such person to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

\* \* \* \* \*

(c) *Deduction for Estate Tax.*—

(1) *Allowance of Deduction.*—

(A) *General Rule.*—A person who includes an amount in gross income under subsection (a) shall be allowed, for the same taxable year, as a deduction an amount which bears the same ratio to the estate tax attributable to the net value for estate tax purposes of all the items described in subsection (a) (1) as the value for estate tax purposes of the items of gross income or portions thereof in respect of which such person included the amount in gross income (or the amount included in gross income, whichever is lower) bears to the value for estate tax purposes of all the items described in subsection (a) (1).

(B) *Estates and Trusts.*—In the case of an estate or trust, the amount allowed as a deduction under subparagraph (A) shall be computed by excluding from the gross income of the estate or trust the portion (if any) of the items described in subsection (a) (1) which is properly paid, credited, or to be distributed to the beneficiaries during the taxable year. This subparagraph shall apply to the same taxable years, and to the same extent, as is provided in section 683.

(2) *Method of Computing Deduction.*—For purposes of paragraph (1)—

(A) The term "estate tax" means the tax imposed on the estate of the decedent or any prior decedent under section 2001 or 2101, reduced by the credits against such tax.

(B) The net value for estate tax purposes of all the items described in subsection (a) (1) shall be the excess of the value for estate tax purposes of all the items described in subsection (a) (1) over the deductions from the gross estate in respect of claims which represent the deductions and credit described in subsection (b). Such net value shall be determined with respect to the provisions of section 421(c) (2), relating to the deduction for estate tax with respect to stock options to which part II of subchapter D applies.

(C) The estate tax attributable to such net value shall be an amount equal to the excess of the estate tax over the estate tax computed without including in the gross estate such net value.

decedent,"; and that the payments were properly treated as income in the hands of the widow, without any basis or stepped-up basis, and subject only to the deduction of the amount of estate tax paid attributable thereto as provided in section 691(c).[2]

■ The court concludes that the payments represent section 691 income to the surviving widow, and that by reason of section 1014(c), the plaintiff is precluded from recovering or using the claimed basis. Although section 691 does not provide a definition of "income in respect of a decedent" the scope of its coverage may fairly be delimited by reference to the purpose for which it was enacted. That purpose was, and is, to avoid the "bunching" effect on the incomes of cash basis taxpayers whose final returns were placed on an accrual basis pursuant to section 42 of the Revenue Act of 1934. 48 Stat. 680. Thus the essential inquiry here is whether the payments represent income which may be said to have accrued to the deceased husband prior to his death. See S.Rep. No.1631, 77th Cong., 2d. Sess., 100–05 (1942).[3] In finding section 691 applicable to post-death payments made pursuant to a substantially similar employment contract, the court in Bernard v. United States, 215 F.Supp. 256 (S.D.N.Y.1963), stated at page 260:

"The critical question that must be answered is, who did the work or performed the services that gives rise to the income. If it is the decedent then such payments fall within Section 691

and are taxed to the recipient in the way that they would have been taxed to the decedent."

Plaintiffs here do not suggest that the payments in question represent anything other than deferred compensation for services rendered by the deceased husband during his life. The payments are not gratuities, but rather are made in recognition of the decedent's services rendered either prior to or subsequent to the signing of the contract in 1959. The surviving widow did not do anything to earn the payments, nor was she or anyone else required to do anything subsequent to her husband's death in order to perfect his employer's obligation to make the payments or her right to receive them.

■ Plaintiffs however contend that although the payments were made in recognition of the deceased husband's "economic activities", the income may not be said to have accrued to him because he was not sufficiently "entitled" to the income prior to his death. This contention is based upon the fact that under the employment contract the deceased husband would never receive the payments in issue, such being conditioned upon the widow's surviving his death. The principle upon which plaintiffs rely is not disputed. It is clear that a taxpayer must be entitled to income prior to its accrual at date of death, free from contingencies. Keck v. Commissioner of Internal Revenue, 415 F.2d 531, 533 (6th Cir. 1969); Trust

2. Defendant alternatively contends that if the court determines that the payments in issue represent proceeds from an annuity purchased by the decedent, then plaintiff is precluded from claiming the desired basis by reason of the exclusion of annuities under section 1014(b) (9) (A). However, it is clear to the court, and actually conceded by both sides that the payments do not represent annuity proceeds.

3. The Regulations, 26 C.F.R. 1.691(a)–1 (b), define "income in respect of a decedent" generally as "those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with his death or for a previous year under the method of accounting employed by the decedent." The term is said to include "(1) All accrued income of a decedent who reported his income by use of the cash receipts and disbursements method; (2) Income accrued solely by reason of the decedent's death in case of a decedent who reports his income by use of an accrual method of accounting; and (3) Income to which the decedent had a contingent claim at the time of his death."

Company of Georgia v. Ross, 392 F.2d 694, 695 (5th Cir. 1967); Lacomble v. United States, 177 F.Supp. 373 (N.D. Cal.1959). However, this is not to suggest that such taxpayer must at any time have an absolute contractual right to its physical receipt.[4] Rather, in the case of post-death payments solely attributable to the personal services of the decedent, the right to the income is fully created by the decedent during his life, and the right in someone surviving to receive the money has certainly matured without conditions precedent or contingencies at the time of his death. Under such circumstances the question of the decedent's "entitlement" to the payments in the sense of actually receiving them in hand prior to his death is simply not relevant to a determination of whether the income may be said to be income in respect of a decedent.

"* * * The decedent here bargained for these payments in return for his personal services and for his remaining employed up to the date of his death. The consideration for those payments flowed entirely from him. He could have directed the payments to any person or entity he chose. He directed that they be paid to his widow, the contract being in essence a third-party beneficiary contract. Under the circumstances, with the decedent having furnished all of the consideration and economic benefit, it would be unrealistic in the extreme to hold that the income in question is not income in respect of a decedent, because the decedent chose to have it payable to someone other than himself or his estate." Collins v. United States, 318 F.Supp. 382 (C.D.Cal., September 24, 1970).

■ Contrary to plaintiffs' contention the court finds no conflict in the authorities dealing with the issue presented here. The courts have uniformly held that post-death payments to an employee's widow are to be treated as "income in respect of a decedent" despite the fact that under the terms of the employment contract, the employee would never be entitled to actual receipt of the income. Miller v. United States, 389 F.2d 656 (5th Cir. 1968); Collins v. United States, 318 F.Supp. 382 (C.D.Cal., September 24, 1970); Hansberry v. United States, 68–1 U.S.T.C. Par. 9185 (N.D.Ill., November 30, 1967); Bernard v. United States, *supra*.[5] The court can find no compel-

---

4. Plaintiffs place particular reliance on Lacomble v. United States, which held that proceeds from a pension or annuity purchased by a decedent are not to be treated as section 691 income in the hands of a post-death recipient. There is some language in the opinion at page 375 which might be interpreted as construing section 691(a) (3) to require actual receipt, or a contractual right to receipt in the decedent. While this court would take exception to any such construction, it should be noted that plaintiff's interpretation of the court's language is not necessary to the *Lacomble* decision.

The remainder of the *Lacomble* decision involves statutory construction with respect to annuities and without reference to either the entitlement of "economic activities" tests. Plaintiff, however, has vigorously denied that the payments here in issue are annuity proceeds. To the extent if at all that *Lacomble* is inconsistent with this decision, this court chooses not to follow it.

5. None of the cases relied on by the plaintiff involved deferred compensation for personal services of a decedent. The decision in Lacomble v. United States rests upon the court's treatment of the payments as annuity proceeds. Both Keck v. Commissioner of Internal Revenue and Trust Company of Georgia v. Ross hold that proceeds from a sale of a decedent's property will not be treated as 691 income in the hands of his widow where decedent's right to the proceeds has not matured at the time of his death. It is submitted that had the decedent created a right to the proceeds prior to death, but contracted away the right to receipt, the results would have been different.

In Trust Company of Georgia, the court expressly stated that "[t]he entitlement test is in accord with the right to income test * * *." The court further noted that under the right to income test, "the right acquired during a decedent's lifetime need not be a legally enforceable one, 'but merely any *right* derived through his

ling reason in the scheme of taxation which would compel it to discard these precedents. On the contrary, the construction sought by the plaintiffs here would produce the anomalous result referred to by the court in Bernard v. United States, *supra*, 215 F.Supp. at 260:

> "It is not necessary that the decedent would have been entitled to the money had he lived. Otherwise all payments that commenced upon death would escape income tax."

Plaintiff seeks to distinguish the cases referred to above on the grounds that the employment contracts involved therein did not contain the remarriage contingency to which her payments were subject. This appears to be a distinction without a difference. While the condition subsequent to plaintiff's right under the contract may reasonably affect its valuation,[6] the essential nature of the payments remains unchanged. The payments were purely the fruit of Nilssen's labors for Clark during his lifetime. At the time of his death the rights and obligations under his employment contract were fixed, the amount was reasonably capable of determination, and there was no substantial doubt as to collection or payment.

The income tax concept of a straight annuity, to take the simplest example, recognizes that during lifetime a person pays for a right to receive future payments after a stated number of years. He pays an annual deposit or premium with tax paid money, that is, money on which already he has paid his income tax. Years later, when the annuity matures, special rules under 26 U.S.C. § 72 permit the establishment of a basis, generally equivalent to the amount paid by the annuitant, and income tax is assessed against the receipt of only that portion of the matured payments as represent interest on the amounts paid over the years.[7] Quite the contrary in the case at bar where no basis of purchase or payment antedates death and the payments to the widow are new-sprung fresh income, so to speak. Were the income tax not to be assessed on such payments, the widow would receive money on which no income tax has been or would be paid. The payments received by the widow clearly are income with respect of a decedent and there simply is no basis, as there is with an annuity or a capital asset, to allocate to or to use against the receipt of the payments.

A separate order granting defendant's motion of dismissal has been entered and this memorandum opinion will serve in lieu of findings as required by Rule 52 of the Federal Rules of Civil Procedure.

services rendered while living'. [Emphasis added]" 392 F.2d 695, n. 2, citing O'Daniel's Estate v. Commissioner of Internal Revenue, 173 F.2d 966, 968 (2d Cir. 1966). Reference is made to Bernard v. United States, as a case involving "payments made after death pursuant to rights created by the decedent during his lifetime." 392 F.2d at 695. Subsequently, in Miller v. United States, the same court found that the "history and analysis of section 691, and cases interpreting it demonstrate the correctness of the trial court's judgment here," that post-death payments for services rendered during a decedent's lifetime are properly treated as 691 income.

6. At the time of her husband's death, the value of the widow's right to receive the monthly payments for life would have been $252,240. That value was in fact reduced to $245,503 as a result of the remarriage contingency calculated pursuant to the American remarriage table.

7. Special rules of course exist for Treasury approved pension and profit sharing plans, and it is not the purpose of this opinion to dismiss annuities, pensions, etc.