[Civ. No. 10175. Third Dist. Sept. 20, 1961.]

BOARD OF ADMINISTRATION, STATE EMPLOYEES' RETIREMENT SYSTEM, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and HARRY C. CRUSE, Respondents.

Stanley Mosk, Attorney General, and William J. Power, Deputy Attorney General, for Petitioner.

Everett A. Corten, Rupert A. Pedrin and William J. Cullinan for Respondents.

WARNE, J. pro tem.*—This is a petition for review of findings of fact made and entered by the Industrial Accident Commission (SACO 7373), wherein it was found that Harry C. Cruse sustained injury arising out of and occurring in the course of his employment, said injury consisting of aggravation of a preexisting heart condition.

The record discloses that Harry Cruse, a highway patrolman employed by the State of California, applied to petitioner for industrial disability retirement. Pursuant to Government Code, section 21026, petitioner applied to the Industrial Accident Commission for determination of the question whether or not Mr. Cruse's disability was industrial. On July 22, 1960, the Industrial Accident Commission, acting through one of its referees, found that the injury was nonindustrial. Subsequently, upon respondent Cruse's petition for reconsideration, the Industrial Accident Commission vacated and set aside the referee's findings and found that the injury was industrial and arose out of the employment. Petitioner herein petitioned for reconsideration, which was denied, and then petitioned this court for a writ of review.

The facts of the case are as follows:

Harry C. Cruse was employed by the California Highway Patrol on April 20, 1931, and served as a highway patrolman in Sacramento County until 1948. He was assigned to Calaveras County in March 1948, and this assignment continued until August 13, 1958, the date of the commencement of his present disability.

On August 13, 1958, while "nailing sheetrock up in the bathroom" of his home, Cruse lost consciousness for a few minutes and he was admitted to a hospital that day. He was discharged from the hospital on August 18, 1958. The final diagnosis was "(1) Prob. Hypertensive Crisis and (2) Poss. Coronary Insufficiency."

At the hearing of February 10, 1960, Cruse testified, in substance, that his duties as a highway patrolman involved patrolling the roads, answering calls concerning accidents, regulating traffic and apprehending violators. Also, he was occasionally called upon to answer calls where a peace officer was needed, such as assault cases, beverage control cases, and dance hall disturbances. He made four or five apprehensions a week, usually moving violations. He testified that if speeding

*Assigned by Chairman of Judicial Council.

were involved he might have to travel in excess of 100 miles per hour.

For a period of approximately three years before August 13, 1958, Cruse had complained of numbness in his arms and hands while chasing speeders. Although he complained to his superior officer about this condition, no complaint was made to his doctor until about August 13, 1958. His symptoms interfered with his ability to stop speeders and his captain complained about his lack of apprehensions. Often there were heated discussions with the captain which upset the respondent Cruse. Also, after stopping a speeder, Cruse would have to wait before talking to the violator in order to compose himself. His symptoms included nausea and a feeling of "pins and needles" in his hands and arms which gradually increased in severity during the three-year period. Since August 1958 he has experienced pain in the area of his heart.

Several medical reports were introduced into evidence. Meyer Friedman, M.D., C. N. Giere, M.D., and David Leon Green, Jr., M.D., were all of the opinion that Cruse was suffering from hypertensive arteriosclerotic heart disease with coronary insufficiency as manifested by angina pectoris. These doctors were all of the opinion that Cruse's work as a highway patrolman was not responsible for his angina pectoris; it was their belief that this syndrome was simply one of the symptoms which occurred when he exceeded a certain reserve of his heart. However, Dr. Friedman testified to the effect that he believed that speeding in the apprehension of traffic violators might aggravate an underlying pathology of angina, and Dr. Giere's report of March 20, 1959, relating to aggravation, states: "[I]t would be unwise, from his own standpoint [Cruse's] to resume the program which he was pursuing when he had his previous difficulties and which were very likely at least causal factors."

The unrefuted testimony of Cruse is that while chasing speeders he felt symptoms which were diagnosed by the various doctors as angina pectoris. Therefore, under the provisions of section 3212.5 of the Labor Code, the Industrial Accident Commission could properly find that Cruse on August 13, 1958, sustained an injury arising out of and occurring in the course of his employment, consisting of aggravation of a preexisting heart condition which developed or manifested itself in the course of his employment while serving as a highway patrol officer. The section provides that in the case of a member of the California Highway Patrol, employed under civil

service upon a regular, full time salary, the term "injury" includes "heart trouble . . . which develops or manifests itself during a period while such member is in the service of . . . the State Highway Patrol. . . ." The section further provides that where such member has served in that capacity for at least five years a disputable presumption arises that such heart trouble arose out of and in the course of his employment.

Aside from the effect of the presumption as substantial evidence supporting the Industrial Accident Commission's finding, the unanimity of medical opinion that Cruse cannot return to his regular duties as a highway patrolman because such work would result in further attacks of angina pectoris, or more dangerous consequences, warrants an inference that Cruse's occupation did aggravate the underlying pathology.

 Petitioner contends that the presumption found in section 3212.5 of the Labor Code is not applicable in the present case as this proceeding was brought under section 21026 of the Government Code for a determination by the Industrial Accident Commission of whether the injury was industrial or nonindustrial. It is contended that section 3212.5 of the Labor Code was only meant to apply in cases involving awards under workmen's compensation. The first paragraph is merely concerned with workmen's compensation; no mention is made of retirement benefits, and on this basis petitioner contends that the maxim *expressio unius exclusio alterius* should be applied. Further, it is argued that section 21026 of the Government Code was enacted before section 3212.5 of the Labor Code, and therefore the Legislature might well have included special retirement benefits under the provisions of section 3212.5 if it had intended to do so. It is also pointed out that section 21026 of the Government Code provides that the Industrial Accident Commission shall make its decision "using the same procedure as in Workmen's Compensation hearings." It is pointed out that the procedural sections of the Workmen's Compensation law commence at section 5300 of the Labor Code. Section 3212.5, on the other hand, is found among the general provisions of the Workmen's Compensation law.

Section 21026 of the Government Code clearly provides that the Industrial Accident Commission shall determine if disability is industrial or nonindustrial within the meaning of the Government Code sections dealing with retirement benefits. Section 20038 of the Government Code provides that

"industrial" within the meaning of the State Employees' Retirement law means "disability or death as a result of injury or disease arising out of and in the course of his employment as such a member." Section 20038.5 of the Government Code defines "industrial" in reference to law enforcement members and employs identical language except that the injury or disease must also arise "while performing duties which require the assumption of risks peculiar to active law enforcement work." Thus, it is clear the "industrial injury" within the meaning of the State Employees' Retirement law is essentially synonymous with "injury" which is compensable under section 3600 of the Labor Code which provides, in part, for recovery "for any injury . . . arising out of and in the course of the employment. . . ." The fact that section 3212.5 of the Labor Code was enacted after section 21026 of the Government Code is immaterial in that section 9 of the Government Code provides that Government Code references to other California law apply to all amendments made to other law. Therefore, it is clear that "industrial injury" is identical to injury which is compensable under the Workmen's Compensation Act and the presumption is equally applicable to both. It is not a question whether the Labor Code presumption is a part of the "procedure" used in Workmen's Compensation proceedings, or is a "substantive" aspect of Workmen's Compensation, as section 21026 of the Government Code provides that the same procedure shall be used by the Industrial Accident Commission in determining the same substantive question.

While the precise issue was not raised in *Smith* v. *Board of Administration Retirement System*, 152 Cal.App.2d 691 [313 P.2d 617], the court there apparently assumed that the presumption of section 3212.5 of the Labor Code applied to proceedings for determination of the issue involved in this case. *French* v. *Rishell*, 40 Cal.2d 477 [254 P.2d 26], is in no way inconsistent with the view taken above. The *French* case merely held that a finding and award of workmen's compensation benefits was res judicata upon a later proceeding before a *city pension board*, where the presumption was not applicable before *that board*. Although the board was not a party to the Industrial Accident Commission proceedings, the city appeared and thus the board was also bound.

As has been pointed out, under section 3212.5 of the Labor Code Cruse's "heart trouble" is presumed to arise out of and in the course of employment. ▆▆▆ Generally, "a presumption is dispelled . . . only when a fact which is wholly ir-

reconcilable with it is proved by the uncontradicted testimony of the *party relying on it or of such party's own witnesses.*" (*Leonard* v. *Watsonville Community Hospital,* 47 Cal.2d 509, 517 [305 P.2d 36]; see also *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 P. 269]; *Levin* v. *Brown,* 81 Cal.App. 2d 913 [185 P.2d 329]; *Steward* v. *Paige,* 90 Cal.App.2d 820 [203 P.2d 858].)

■ Petitioner contends that the presumption found in section 3212.5 of the Labor Code, even if applicable to this proceeding, was rebutted. It argues that Doctor Friedman was Cruse's own witness and that his report and testimony are irreconcilable with the presumption found in said section. We do not agree.

Although Dr. Friedman was originally employed by Cruse and examined him, Dr. Friedman's report was admitted in evidence as the Industrial Accident Commission's exhibit under its rules, and counsel for Cruse was allowed to cross-examine the doctor. Cruse did not call Dr. Friedman as a witness, nor did he offer his report in evidence. Thus, Dr. Friedman cannot be considered as Cruse's "own witness."

■ It is well established in California that a presumption is evidence. (*Estate of Miller,* 143 Cal.App.2d 544, 550 [299 P.2d 1005]; *Smellie* v. *Southern Pacific Co.,* 212 Cal. 540, 549 [299 P. 529]; Code of Civ. Proc., § 1957.) ■ Furthermore, "a presumption may furnish substantial evidence for a finding in accordance therewith." (*Fireman's Fund Ins. Co.* v. *Romero,* 128 Cal.App.2d 331, 338 [275 P.2d 83].) ■ Cruse testified that he suffered numbness in his arms and hands with occasional nausea while chasing speeders and, also, that he suffered pain in the area of his heart which extended up to his left arm. It is clear from the medical testimony that these symptoms were manifestations of heart disease. Thus, the evidence supports and is not irreconcilable with the presumption as well as the Industrial Accident Commission's finding that the injury was compensable. (*Commercial Cas. Ins. Co.* v. *Industrial Acc. Com.,* 116 Cal.App.2d 901, 909-910 [254 P.2d 954].)

The findings and decision made after reconsideration by the Industrial Accident Commission are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied November 15, 1961. Schauer, J., was of the opinion that the application should be granted.