[Civ. No. 47335. First Dist., Div. One. June 1, 1981.]

HOWARD MEL et al., Plaintiffs and Respondents, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

**COUNSEL**

George Deukmejian, Attorney General, Mervin R. Samuel and Timothy G. Laddish, Deputy Attorneys General, for Defendant and Appellant.

David C. Dunlap for Plaintiffs and Respondents.

**OPINION**

**NEWSOM, J.**—The present appeal is one of four companion cases argued and submitted together to this court. The central question common to all four cases is whether surviving spouses of decedents who died after 1965 and before 1976 are entitled to a new tax basis, *for state personal income tax purposes*, for their share of certain community property, the decedent's share of which was transferred, at least in part, into a testamentary trust from which the surviving spouse benefitted. The answer to this necessarily somewhat convoluted question

depends upon the interpretation given certain Revenue and Taxation Code sections in effect between 1966 and 1975.

Each of the taxpayers in these companion cases was a wife who had survived her husband, and who had received under her husband's will a life interest in a residuary trust—or, in one case, a life annuity to be paid first from trust income. In each instance the trust corpus included the husband's one-half share of certain community assets.

The estate of each decedent husband underwent probate administration in a California court. Under our probate law as it then existed, all of the community property of the decedent husband and his surviving spouse was included in the probate administration.[1]

The facts of the present case, like those of its companion appeals, are not in dispute, and may be summarized as follows.

Charles Mel (hereinafter decedent) died on December 10, 1967. All of his property subject to probate administration was community property. At the time of his death, he and his wife Florence also owned as joint tenants $123,611 in bank accounts.

Charles' will, dated March 14, 1967, was admitted to probate in Alameda County; his daughter, Dorothy Kulp, was appointed executrix. Since under the applicable provisions of the Civil Code all of the community property had been subject to Charles' management and control, all of that property, including Florence's one-half share, was administered in his estate pursuant to Probate Code section 202 as then enacted.

Charles' will did not require any election by his spouse and provided for the disposition of only his share of the community property. It left his interest in the family home and furnishings to his wife Florence and

---

[1]Probate Code section 201 provides that upon the death of a spouse, "one-half of the community property *belongs* to the surviving spouse;..." (Italics added.) Former section 202 of the Probate Code provided, however, that "[c]ommunity property *passing from the control* of the husband, ... by reason of his death ... is subject to his debts and to administration and disposal under the provisions of ... this code...." (Italics added.) Until 1975, under the applicable provisions of the Civil Code, a husband had management and control of the community property to the exclusion of his wife. (Civ. Code, former §§ 172, 172a.) Consequently, when a husband died, all of the community property was administered in his estate. (*Thompson v. Boyd* (1963) 217 Cal.App.2d 365, 385-386 [32 Cal.Rptr. 513].)

made various cash bequests to third parties. The will provided that all death taxes were to be paid out of the residue of the estate; that after payment of debts, expenses, and taxes, the residue was to be distributed in trust, with a lifetime beneficial interest to Florence, and the remainder to their three children.[2] In addition to the bequests provided in the will, Florence received by order of the probate court a family allowance for a period of nine months during the administration of the estate.

All of the community property was included for inheritance tax purposes in the "fair market value" of Charles' estate, as shown on the report of the inheritance tax appraiser. The report fixed the value of the estate at $5,908,152.98. The probate court confirmed the appraiser's report and fixed inheritance taxes accordingly. There were substantial debts, expenses and taxes to be paid in the administration of the estate. Portions of the community property—including both Charles' and Florence's shares—were sold by the executrix in the course of probate to pay those debts and charges.

Subsequently, Florence sold portions of her own share of the community assets. In computing gain or loss on the sales in her personal income tax returns for 1968 and 1969, Florence used as a tax basis the value of those assets as of the date of her husband's death.[3] Thereafter, on or about January 15, 1971, the Franchise Tax Board issued notices proposing to assess additional income taxes in the amount of $62,133.96 plus interest for 1968, and in the amount of $17,545.09 plus interest for 1969, on the ground that Florence's interest in the assets did not qualify for a new tax basis.

Florence filed a written protest with the board on March 13, 1971. She died on March 30, 1972; her executor paid the proposed assessments, and on October 21, 1975, the board disallowed claims for refund. The executor and Florence's three children then brought this action.

---

[2]The residuary clause provided that Florence was to receive the total net income from the trust for her lifetime, with discretion in the trustee to pay out principal for support, care, comfort and education.

[3]For most items, market value at husband's death represented an *increase* over original cost or adjusted cost—the figure used was a stepped-up basis. But for certain miscellaneous assets in the Mel case, market value at husband's death was apparently *less* than original cost or adjusted cost—the figure used by the taxpayer for each of those miscellaneous assets was a stepped-down basis. To the extent that market value represented a stepped-down basis, the result would have been disadvantageous to the taxpayer for those particular assets.

The trial court ruled in favor of the executors, finding that, since, as required by statute, at least one-half of the total community interest in the subject property had been included in the decedent's gross estate, Florence was entitled to a stepped-up basis under Revenue and Taxation Code section 18045, subdivision (e). The board has appealed.[4]

Respondents argue, as do each of the taxpayers in these companion appeals, that in disposing of her own interest in community assets which already had been administered in her decedent husband's estate and thereafter computing her capital gains for personal income tax purposes, the surviving wife was entitled to use as her (stepped-up) basis the fair market value of each asset as of the date of her husband's death—a claim based upon Revenue and Taxation Code sections 18044 and 18045,[5] as those sections read during the tax years in question, and particularly upon former subdivision (e) of section 18045.[6] The board insists that a review of these same code sections, in conjunction with other relevant statutes then in effect, compels a different result.

The pertinent portions of sections 18044 and 18045 provided, at the time here in issue, as follows: "18044. . . . The basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, . . . be the fair market value of the property at the time of its acquisition.

"18045. . . . For purposes of section 18044, the following property shall be considered to have been acquired from or to have passed from the decedent: . . . (e) In the case of decedents dying after April 8, 1953, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse . . . if at

---

[4]This appeal differs in two respects from its companion cases. First, in *Mel* only, the husband's share of certain assets was used in paying a family allowance to the surviving wife. Respondents in *Mel* conceded at trial that if appellant's interpretation of the governing statutes is correct, then the wife's share of those same assets (used to pay the family allowance) would not be entitled to a new basis.

Second, notwithstanding the board's appeal, the parties have stipulated that respondents herein are entitled to a small partial judgment which resulted from the tracing of certain assets in the Charles Mel estate.

[5]All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[6]All references to section 18045 are to that section as it existed between its enactment in 1955 (Stats. 1955, ch. 939, § 2, p. 1787,) and its amendment in 1975. The section was reenacted in 1957 and 1968, when subdivisions (g) and (f) were amended without changing subdivision (e). (Stats. 1957, ch. 160, p. 780, § 12; Stats. 1968, ch. 1417, § 21, p. 2798.)

least one-half of the whole of the community interest in such property was includable in determining the value of the decedent's gross estate under Chapter 3 of the California Inheritance Tax Law."

The resolution of this appeal turns, then, upon our interpretation of the following clause in the section 18045, subdivision (e), condition: "If at least one-half of the whole of the community interest in such property was includable in determining the value of the decedent's *gross estate* under Chapter 3 of the California Inheritance Tax Law." (Italics added.) It is only when this condition is satisfied that the taxpayer is deemed to have *acquired* property from a decedent and become entitled to benefit from the "stepped-up" basis provided by the statute.

Our interpretative task would be simplified if chapter 3 of the California Inheritance Tax Law defined "gross estate." However, in what hardly shines as a beacon of legislative clarity, the chapter neither defines nor indeed mentions the term "gross estate." Moreover, the term is without any settled meaning in California law; its definition depends upon the circumstances presented. (See *Estate of Cushing* (1952) 113 Cal.App.2d 319, 328-334 [248 P.2d 482].) We must therefore resort to an examination of the legislative scheme to determine its meaning and application to the present dispute.

■ In construing the relevant statutes we are mindful that the goal of statutory construction is the ascertainment of legislative intent so that the purpose of the law may be effectuated. (*People v. Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859].) A cardinal rule is that statutes should be given a reasonable interpretation which comports with the apparent purpose and intent of the Legislature. (*In re Ruben M.* (1979) 96 Cal.App.3d 690, 697 [158 Cal.Rptr. 197]; *Gerkin v. Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1025 [157 Cal.Rptr. 612]; *Cory v. Golden State Bank* (1979) 95 Cal.App.3d 360, 367 [157 Cal.Rptr. 538].) Statutory language must be read in context, keeping in mind the nature and purpose of the enactment, and must be given such interpretation as will promote rather than defeat the objective of the law. (*Pennisi v. Department of Fish & Game* (1979) 97 Cal.App.3d 268, 272 [158 Cal.Rptr. 683]; *Steilberg v. Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].)

■ Moreover, we should construe the governing statute as a whole, in harmony with other statutes relating to the same general subject. (*People v. Shirokow, supra,* 26 Cal.3d 301, 307; *Associated Home*

*Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].)

Given the uncontradicted nature of the facts before us, the question of statutory construction becomes one of law. (*Mount Vernon Memorial Park* v. *Board of Funeral Directors & Embalmers* (1978) 79 Cal. App.3d 874, 884 [145 Cal.Rptr. 275]; *Killian* v. *City & County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430].) And so we are not bound by, and "cannot rest upon," the findings or decision of the trial court. (*Chase Brass & Copper Co.* v. *Franchise Tax Bd.* (1970) 10 Cal.App.3d 496, 502 [95 Cal.Rptr. 805].)

The parties agree that section 18045 was enacted to bring California personal income tax law into conformity with federal law. Except for its effective date and statutory cross-referencing, former subdivision (e) of section 18045—as enacted in 1955—was identical to subdivision (b)(6) of section 1014 of the federal Internal Revenue Code of 1954. (26 U.S.C.A. § 1014(b).)

The federal provision, we find, was first enacted as part of the Revenue Act of 1948. "Section 1014(b)(6) was designed to equalize the incidence of taxation between community-property and common-law states, not to provide a special benefit to community-property taxpayers." (*Willging* v. *United States* (9th Cir. 1973) 474 F.2d 12, 14; see also *Bath* v. *United States* (S.D.Tex. 1962) 211 F.Supp. 368, 369; aff. *per curiam* (5th Cir. 1963) 323 F.2d 980.)[7]

In the Senate Finance Committee's report on the 1948 act, section 1014, subdivision (b)(6) was described as follows: "The amendment prescribes for the surviving spouse, after the death of the decedent, a new basis for her portion of the property held, at the time of such death, by the decedent and his spouse as community property. Under existing law, the surviving spouse's basis for such property is the same

---

[7]Thus, it has been held that a taxpayer in a community property state cannot, under the federal statute, receive a stepped-up basis when such treatment would not be afforded a taxpayer in a noncommunity property state. (*Collins* v. *United States* (C.D.Cal. 1970) 318 F.Supp. 382, 385, affd. *per curiam* (9th Cir. 1971) 448 F.2d 787.)

after the death of the decedent as before. Under the amendment, the surviving spouse is regarded, after such death, as acquiring such portion of the community property by devise, bequest, or inheritance, with the same basis as if so acquired from the decedent. . . .

"The amendment applies only if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under section 811 [of the Internal Revenue Code of 1939]. Thus a husband will not have a new basis for his part of the community property upon the death of his wife in those situations in which her interest in their community property is not subject to estate tax because of the limited nature of her interest, as is the case with community property under the law of Nevada and New Mexico, and certain community property, under the law of California, acquired by the community prior to April 16, 1923." (Sen.Rep. No. 1013, 1948 U.S. Code Cong. & Admin. News at pp. 1251-1252.)

It follows then that under analogous federal tax law, a taxpayer may not claim a stepped-up basis unless at least one-half of the property in question was subject to federal estate *taxation,* without deduction or exemption. (See *Collins* v. *United States, supra,* 318 F.Supp. 382, 387.)

██ If, as we think, former subdivision (e) of section 18045, was to have been consonant with the federal legislation on which it was modeled, it must be construed so as to equate the phrase "includible in . . . decedent's gross estate under Chapter 3" with "*subject to* state inheritance tax under Chapter 3 of that law." (Italics added.) In order, therefore, to obtain a stepped-up basis under former subdivision (e), a taxpayer must show that at least one-half of the whole of the community property held by the decedent and the taxpayer—as the surviving spouse—was *subject to* state inheritance taxation under chapter 3 of the Revenue and Taxation Code.[8]

Because the language of former subdivision (e) focuses upon each item of community property, such an approach must be taken respecting individual community assets. If at least one-half of the community's

---

[8]We note that a community asset may be "subject to" the Inheritance Tax Law under chapter 3 without having the decedent's transfer of that property result in actual inheritance tax liability, for exclusions or exemptions outside of chapter 3 might apply. As an example, a bequest to charity would be subject to that part under the terms of chapter 3 even though it would not result in inheritance tax liability due to the provisions of section 13842, which is not part of chapter 3.

interest in a specific community asset was subject to state inheritance taxation under chapter 3 of the code, the surviving spouse's one-half share of the asset is entitled to the "stepped-up" basis, i.e., the fair market value of the asset at the decedent's death. If less than one-half of the asset was subject to taxation under chapter 3, the section 18045 condition not being satisfied, the taxpayer will not be afforded the stepped-up basis for that asset.

It follows that we reject respondents' argument that the term "includible in determining the value of the decedent's gross estate under Chapter 3" must be interpreted as referring to community property merely *subject to administration* in a decedent husband's estate.

Respondents' position, we find, rests upon two contentions, neither of which we think supportable. The first is that their statutory analysis is consistent with the legislative history, and with the purpose of the statute to conform California law to the federal practice of affording a stepped-up basis to the surviving spouse in every case except where the wife died first owning pre-1923 community property.[9] Second, respondents stress that, during the years in question, it was the practice of the California Inheritance Tax Department of the Controller's office to value a decedent's "gross estate" by including therein *all* the community property—the interest of both spouses. Citing *Estate of Coffee* (1941) 19 Cal.2d 248 [120 P.2d 661], and *Estate of Atwell* (1948) 85 Cal. App.2d 454 [193 P.2d 519], respondents contend that inclusion of the community interest of both spouses in determining the value of a gross estate was not only done by the inheritance tax appraiser here, but was also required by law.

In our view respondents' interpretation of former subdivision (e) of section 18045 is strained. By making all community property eligible for a new tax basis, it in effect eliminates the section 18045, subdivision (e) condition which clearly by its terms would afford a stepped-up basis only *if* at least one-half the value of the community interest in an asset could have been included in determining the value of the gross estate.[10]

---

[9]Such property was incapable of being included in the decedent wife's gross estate because her interest was then considered a mere expectancy. (*Roberts v. Wehmeyer* (1923) 191 Cal. 601 [218 P. 22].)

[10]The literal language of the pertinent subdivision imposes a condition by using the conditional word "if" as a starting point for determining whether property shall be deemed to have been acquired from the decedent.

■ As respondents would have it the reference to chapter 3 and the statutory condition serves no useful purpose—an interpretation which runs afoul of the fundamental rule of statutory construction that an interpretation which makes some words surplusage is to be avoided. (*California Mfrs. Assn.* v. *Public Utilities Com., supra*, 24 Cal.3d 836, 844; *Kriz* v. *Taylor* (1979) 92 Cal.App.3d 302, 311 [154 Cal.Rptr. 824].) "'[I]t is presumed that every word, phrase and provision employed in a statute was intended to have some meaning and perform some useful office ....'" (*Gerkin* v. *Santa Clara Valley Water Dist., supra*, 95 Cal.App.3d 1022, 1027.)

Our conclusion that former subdivision (e) of section 18045 as reasonably construed refers to property "subject to" taxation under chapter 3 of the Revenue and Taxation Code, is also consistent with the emphasis of chapter 3—as it existed during the period in issue—which was clearly upon the delineation of forms of community and quasi-community property transfers to be considered "subject to" the Inheritance Tax Law. Respondents' interpretation, on the other hand, gives no plausible reason for the reference in section 18045, subdivision (e) to chapter 3,[11] and strikes us as anomalous. Interpretive guidelines instruct us that statutes should be construed to avoid anomalies. (*State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 775 [144 Cal.Rptr. 758, 576 P.2d 473]; *Estate of Boyd* (1979) 98 Cal.App.3d 125 [159 Cal.Rptr. 298]; *County of Orange* v. *Cory* (1979) 97 Cal.App.3d 760, 768 [159 Cal.Rptr. 78].)

Finally, equating the phrase "includible in determining the value of the decedent's gross estate under Chapter 3" with "subject to taxation under Chapter 3" is the only interpretation of the statute which harmonizes section 18045 with chapter 3 to produce a reasonable result, for respondents' contrary construction fails entirely to rationally relate section 18045, subdivision (e) to chapter 3. A perusal of chapter 3 (community property) shows it to be contained in part 8 (inheritance tax) of the code. It begins with section 13551 which provided during the

---

[11]Respondents suggest that chapter 3 of the code is entitled "Community Property," and defines which property is to be classed as community property for the purpose of inheritance taxation. We disagree. A review of chapter 3 reveals that only section 13560 (involving interspousal gifts) specifically determines whether a specific type of property shall be treated as separate or community property, and it provides that such property shall be treated as separate property. The remaining provisions of the chapter are primarily concerned with the type of community property transfers subject to inheritance for taxation under part 8 of the code.

period here in question: "Upon the death of a spouse: (a) None of the community property transferred to a spouse is subject to this part, except as provided in section 13694 [concerning gifts of powers of appointment]. (b) All of the decedent's half interest in the community property passing to anyone other than the surviving spouse is subject to this part." Since community property transferred to a spouse is expressly not "subject to" inheritance taxation under chapter 3, as was found to be the case by the probate court here, it is difficult logically to conceive it as "includible in determining the value of the decedent's gross estate"—at any rate *under this part of the code* within the meaning of former subdivision (e) of section 18045.

Respondents point out that only by virtue of the 1961 and 1965 amendments to section 13551 is the decedent's share of transferred community property exempted from inheritance taxation. When section 18045 was enacted, in 1955, section 13551 of chapter 3 provided that upon the death of a husband his one-half share of community property was subject to taxation, thereby entitling all surviving spouses to a stepped-up basis under the section 18045, subdivision (e), reference to chapter 3. ■ ■■ ■ Respondents argue that the 1961 and 1965 amendments to section 13551 did not modify former subdivision (e) of section 18045; that the reference to chapter 3 therein must be limited to section 13551 as it existed when section 18045, subdivision (e) was originally enacted, or a disfavored repeal by implication of section 18045, subdivision (e) results.[12]

While it is true that nothing in the legislative history of the 1961 and 1965 amendments to section 13551 reveals any purpose of influencing the operation of section 18045,[13] we nevertheless conclude that the reference to chapter 3 in former subdivision (e) applies to those subsequent amendments. That conclusion is buttressed by section 9 of

---

[12] "Repeals by implication are not favored and are recognized only when there is a conflict between two or more legislative enactments.'" (*In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980]; see also *In re Thierry S.* (1977) 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 566 P.2d 610].) A modification of a statute is preferred over a repeal by implication. (*Cal. Drive-in Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].)

[13] The trial court found that the 1961 amendment to section 13551 was intended to equalize the treatment of widows and widowers by excluding transfers of community property among spouses in California from the operation of the Inheritance Tax Law, rather than to modify, alter or repeal section 18045, subdivision (e). We agree with this finding, but do not feel that it is determinative of the issue.

the Revenue and Taxation Code, which provides: "Whenever any reference is made to any portion of this code or of any other law, the reference applies to all amendments and additions thereto now or thereafter made." Rather clearly, therefore, the section 18045, subdivision (e) reference to chapter 3 was applicable to the amended versions of section 13551. (*Board of Administration* v. *Ind. Acc. Com.* (1961) 195 Cal.App.2d 719, 724, [16 Cal.Rptr. 134] dealing with an identical provision—§ 9 of the Gov. Code.)

Therefore, absent any express exclusion, by its terms section 9 automatically updated the statutory reference in section 18045, subdivision (e), to include both the 1961 and 1965 amendments to section 13551. This approach is consistent, too, with the practical operative effect of section 18045, subdivision (e); if the reference in it to chapter 3 is to have any meaning, it must be to the chapter as it existed at the death of the decedent—otherwise the result under section 18045, subdivision (e), would not depend upon the actual transfer made by the decedent at death.[14]

Moreover, section 18045, subdivision (e), as construed here, was not impliedly repealed, as respondents argue, by the amendments to section 13551: former subdivision (e) operated in the same manner, in conjunction with chapter 3, both before and after the amendments.

Respondents submit that the ultimate tax result produced by this updated application of former subdivision (e) is inconsistent with the federal scheme, under which taxpayers were afforded a stepped-up basis because the decedent's share of a community asset *was* included in his gross estate for federal estate tax purposes. We find no such inconsistency. The discrepancy in personal income tax results was due, not to any difference in personal income tax provisions, but resulted from the more favorable *inheritance* tax treatment afforded California taxpayers by section 13551, which affected state personal income tax. The objective of conformity is preserved by our interpretation of former subdivision (e) of section 18045 stated herein.[15]

---

[14]We add that section 13551, by its terms, applies "Upon the death of the spouse: . . ."

[15]The interpretation of section 18045, subdivision (e) adopted by this court also comports with the basic position taken by the board in publications prior to this action. As

Applying this interpretation of section 18045, former subdivision (e), to the facts of the instant appeal presents additional issues not encountered in its companion cases. Respondents submit that under the "asset-by-asset" approach herein adopted, only a portion of the decedent's community assets passed to the surviving spouse. The remainder —chiefly corporate stock—went to pay (1) estate debts, expenses and taxes, (2) the family allowance, and (3) specific and residuary bequests to third persons. Employing the asset-by-asset approach to such transfers, respondents submit that since the decedent's share of these assets was subject to inheritance tax, the community property shares of the surviving spouse in each such asset are entitled to a new tax basis under section 18045, former subdivision (e).

Concerning the community assets used in the probate estate for payment of debts or expenses of administration, respondents argue that the decedent's share of such assets was part of his gross estate, from which debts and expenses of administration are deducted under chapter 6, rather than chapter 3, of the Inheritance Tax Law before the net taxable estate is determined. Thus, according to respondents' application of the "asset-by-asset" scheme, any community assets which are used, at least to the extent of the decedent's share thereof, would be "includible in his gross estate," thereby affording the surviving wife a stepped-up personal income tax basis for her share of those assets subsequently sold.

We conclude, however, that respondents' approach would, in effect, include all the decedent's probate estate, which, as we have noted, ignores the clear statutory reference to chapter 3. The more reasonable interpretation of section 18045, former subdivision (e), is to examine the bequest which was chargeable for the particular debt or expense at issue. This is so because a bequest passes upon the decedent's death, even though it may be subsequently subject to probate administration. (Prob. Code, § 300; *Ludwicki* v. *Guerin* (1961) 57 Cal.2d 127, 131 [17 Cal.Rptr. 823, 367 P.2d 415].) ■ Thus, if a bequest of the decedent's interest in a community asset passes to someone other than the

the agency charged with administration of the state personal income tax law, this interpretation is entitled to great weight. (*Metromedia, Inc.* v. *City of San Diego* (1980) 26 Cal.3d 848, 878 [164 Cal.Rptr. 510, 610 P.2d 407].) Leading tax authorities have similarly construed the statute. (Cal. Inheritance Tax Practice (Cont.Ed.Bar 1973) § 12.47, p. 264; Martin, *California Inheritance Taxation of Inter-Spousal Transfers* (Winter, 1975) 2 Community Prop. J. 6, 7-8; 2 Goddard, Cal. Practice Probate Court Practice (3d ed. 1977) § 1252, p. 222; Bock, Guidebook to Cal. Taxes (30th ed. 1979) pp. 174-176.)

surviving spouse, then payment of debts or expenses chargeable to that bequest would qualify the surviving spouse's interest in that asset for a new tax basis.[16]

However, in the present case, as in its companion appeals, the estate contained sufficient assets to allow for distribution of all specific bequests in full, with the remainder passing into the residuary trust. Consequently, the debts and expenses were attributable to the residuary trust. Since the wife benefitted from the trust—which included the decedent's share of community assets—we conclude that the payment of debts and expenses out of trust assets rendered the one-half share of the surviving spouse in those same assets ineligible for a new tax basis under section 18045, subdivision (e).

■ A community asset used to pay the family allowance is, for inheritance tax purposes, treated as a transfer of a bequest to the surviving wife, rather than as a debt or expense; it is a transfer subject to taxation under chapter 4 of the Inheritance Tax Law. (§ 13623.) It is not subject to taxation under chapter 3 of the Inheritance Tax Law, and, therefore, does not qualify the surviving spouse's share of each community property asset used to pay the family allowance for a stepped-up tax basis.[17]

■ As to community property assets transferred to persons other than the surviving spouse, or which can be traced to such transfers, the surviving spouse is entitled to a new tax basis upon the subsequent sale of her share thereof under section 18045, subdivision (e), because those community assets were subject to taxation pursuant to chapter 3. (§ 13551, subd. (b).) The board has stipulated to partial judgment with regard to all community property assets which fit within this category, and we agree with the principles embodied in that stipulation.[18]

---

[16]Such would be the case even if the decedent's will had not so provided. (Prob. Code, § 750; *Estate of Dolley* (1968) 265 Cal.App.2d 63, 71 [71 Cal.Rptr. 56].)

[17]Respondents concede that if the board's concept of section 18045, subdivision (e) is adopted, the surviving spouse's share of community property assets used to pay the family allowance would not qualify for a stepped-up basis.

[18]The problem of tracing and bequests to third persons does not arise in the companion appeals. In the *Bank of California* (1 Civ. 47334) and *Levit* (1 Civ. 47337) cases, the decedent husband's entire one-half interest in the community assets was distributed to the residuary trust.

With regard to the remaining assets which were transferred to Florence, including those which passed to her through the testamentary trust, she received a vested, undivided equitable interest therein. (*Ludwicki v. Guerin, supra*, 57 Cal.2d 127, 131-132; *Estate of Feuereisen* (1971) 17 Cal.App.3d 717, 720-721 [95 Cal.Rptr. 165].) Pursuant to section 13551, subdivision (a) of chapter 3, these assets were not subject to the inheritance tax. (*Estate of Cohen* (1971) 4 Cal.3d 41, 45-46 [92 Cal.Rptr. 684, 480 P.2d 300]; *Estate of Legatos* (1969) 1 Cal. App.3d 657, 659 [81 Cal.Rptr. 910].) Concededly, her own interest in the community property assets was also not subject to the tax.

As a result of the transfer of the remaining community assets to the surviving wife, including the residuary trust from which she benefitted, less than "one-half of the whole" of each such asset was "includible in determining the value of decedent's gross estate under Chapter 3 of the Inheritance Tax Law" as we have herein defined that term. (§ 13551, subd. (a).)

We decline respondent's suggestion that we apportion the allowable stepped-up basis in accordance with the percentage of the decedent husband's share of the community property asset actually transferred to the wife.[19] Such an approach would deny a new tax basis only for the proportion or percentage of a community property asset which represents the share of that asset actually transferred to the surviving wife.

■ While reasonable, an apportionment of the tax basis is not suggested by the statute. Instead, section 18045, former subdivision (e), by its terms, requires the court to determine if "at least one-half of the *whole* of the community interest in such property was includible in determining the value of the decedent's gross estate under Chapter 3 . . . ." (Italics added.) If so, the statute provides for a new tax basis for such "property." Section 18045, subdivision (e), does not contemplate an "apportioned basis." We conclude that each community property asset must qualify as a "whole," or not at all.

---

[19]Respondents note that the surviving spouse's undivided life interest in the trust was valued for inheritance tax purposes at 13.965 percent of the total trust corpus. The remaining approximately 86 percent of the property represented transfers of the remainder interest to third persons, and was fully taxed under the inheritance laws. Thus, respondents argue, as to the surviving spouse's share of the community assets transferred into the testamentary trust (a share subsequently sold by Florence), under an "apportioned basis" approach, 86 percent of those assets should receive a new tax basis under former subdivision (e).

The judgment is reversed. The case is remanded to the trial court for entry of partial judgment in favor of respondents to which the parties have stipulated, and further proceedings consistent with the views expressed herein.

Racanelli, P. J., and Grodin, J., concurred.

A petition for a rehearing was denied June 25, 1981, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied September 16, 1981. Tobriner, J., and Mosk, J., did not participate therein.