OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 89-507 |
| of | : | |
| | : | DECEMBER 6, 1989 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |
| JACK R. WINKLER | : | |
| Assistant Attorney General | : | |
| | : | |

---

THE HONORABLE JAMES A. CURTIS, COUNTY COUNSEL, NEVADA COUNTY, has requested an opinion on the following question:

Does the granting of five or more 99 year leases to members of a "limited equity housing cooperative" constitute a subdivision of land within the meaning of the Subdivision Map Act?

CONCLUSION

The granting of five or more 99 year leases to members of a "limited equity housing cooperative" does not constitute a subdivision of land within the meaning of the Subdivision Map Act.

ANALYSIS

The Subdivision Map Act is found in section 66410 et seq. of the Government Code. The basic thrust of the act is set forth in section 66411[1] which states that "[r]egulation and control of the design and improvement of <u>subdivisions</u> are vested in the legislative bodies of local agencies [i.e., a city, a county or a city and county]"; that "[e]ach local agency shall by ordinance regulate and control. . . <u>subdivisions</u> for which this division [the Subdivision Map Act] requires a tentative and final or parcel map;" and that [under specified conditions] "[e]ach local agency may regulate and control other <u>subdivisions</u>, . . ." (Emphasis added.)

In this request for our opinion we are asked whether the granting of five or more 99 year leases to members of a "limited equity housing cooperative" constitutes a "subdivision" within

---

[1]All section references are to the Government Code unless otherwise indicated.

the meaning of the Subdivision Map Act and, accordingly, is subject to regulation by a "local agency" pursuant to that act. For purposes of this opinion, we assume that the granting of these five or more 99 year leases will constitute the conversion of five or more dwelling units to a "limited-equity housing cooperative," a form of stock cooperative. (See California Condominium and Planned Development Practice (Cont.Ed.Bar 1984) p. 31.)[2]

As used in the Subdivision Map Act, the term "subdivision" is defined in section 66424 of the Government Code as follows:

> "`Subdivision' means the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease or financing, whether immediate or future except for leases of agricultural land for agricultural purposes. Property shall be considered as contiguous units, even if it is separated by roads, streets, utility easement or railroad rights-of-way. `Subdivision' includes a condominium project, as defined in Section 1350 of the Civil Code, a community apartment project, as defined in Section 11004 of the Business and Professions Code, or the conversion of five or more existing dwelling units to a stock cooperative, as defined in Section 11003.2 of the Business and Professions Code. As used in this section, `agricultural purposes' means the cultivation of food or fiber or the grazing or pasturing of livestock." (Emphasis added.)

It is thus seen that for the purpose of the Subdivision Map Act a "`subdivision' means the division, by any subdivider, of any unit or units of improved or unimproved land, or any portion thereof. . . for the purpose of sale, lease or financing."[3]

It is also seen that for the purpose of the Subdivision Map Act a "`[s]ubdivision' includes. . . the conversion of five or more dwelling units to a stock cooperative, as defined in section 11003.2 of the Business and Professions Code." (Emphasis added). We will first address

---

[2]As explained in the just cited reference:

> "Limited equity housing cooperatives are a recent creation of state law designed to provide ownership housing for low and moderate income residents. Basically, a limited equity housing cooperative is a stock cooperative (see §1.24) that meets the additional criteria of being organized for a public purpose (i.e., either is a nonprofit corporation, or the real property on which it is built will revert to public or charitable ownership on termination of the corporation; Health & S C §33007.5(a)), and containing in its articles or bylaws specified limitations on the equity that can be realized on a sale of shares or a membership interest in the corporation Bus & PC §11003.4; Health & S C §33007.5. . . ."

[3]"Subdivider" is defined in section 66423 of the Government Code as follows:

> "`Subdivider' means a person, firm, corporation, partnership or association who proposes to divide, divides or causes to be divided real property into a subdivision for himself or for others except that employees and consultants of such persons or entities, acting in such capacity, are not `subdividers.'"

Generally, a tentative and final subdivision map are required for all subdivisions of five or more parcels or units. (Gov. Code. § 66425 et seq.)

the question whether this incorporation by reference of section 11003.2 of the Business and Profession Code operates so as to include a "limited equity housing cooperative" in the definition of "subdivision" set forth in section 66424 of the Government Code. We will then address the issue whether or not the general language of section 66424, set forth above, is broad enough to include the 99 year leases at issue herein.

## 1. The Incorporation By Reference

Section 66424 of the Government Code was amended in 1979 by chapter 1192, Statutes of 1979, effective January 1, 1980 (Cal. Const. art. IV, § 8(c)) to set forth the subject incorporation by reference of section 11003.2 of the Business and Professions Code, a provision of the Subdivided Lands Act (Bus. & Prof. Code, § 11000 et seq.)[4] In determining precisely what provisions of law are incorporated by reference, we are governed by the rules set forth in the leading case of *Palermo* v. *Stockton Theaters* (1948) 32 Cal.2d 53, 58-59 as follows:

> "`It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified, and that the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary. [Citations omitted.]

> ". . . . . . . . . . . . . . . . . . . . . .

> "`It also [ ] [must] be noted that there is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time, and (it maybe assumed although no such case has come to our attention) as they may be subjected to elimination altogether by repeal.  [Citations omitted.]'"

It has been suggested that Section 9 of the Government Code changes the rule of construction of the *Palermo* case for references in provisions of the Government Code. Section 9 provides:

> "Whenever reference is made to any portion of this code or of any other law of this State, the reference applies to all amendments and additions now or hereafter made."

The suggestion is that whenever a Government Code section makes reference to another statute section 9 requires that section to be construed as referring to the other statute in its current form. This would mean that the section would change each time the statute referred to is changed, contrary to the rule of construction for special references announced in the *Palermo* case. (Such interpretation of section 9 would be consistent with the *Palermo* rule for general references.)  We reject the suggestion because we have concluded that Section 9 does not apply to a section which incorporates another statute into its provisions by reference to the other statute.

---

[4]"The Subdivided Lands Act is a consumer protection statute intended primarily to ensure disclosure of pertinent information to purchasers or lessees of subdivided lots. . . and is administered by the State Real Estate Commissioner." (Subdivision Map Act Practice (Cont.Ed.Bar 1987) p. 11.)

Undoubtedly the Legislature may abolish or change a common law rule of statutory construction such as the rule explained in the *Palermo* case. The issue is the extent to which section 9 modifies that common law rule. Statutes are to be construed so as to avoid conflict with common law rules if reasonably possible. (*Dry Creek Valley Assoc.* v. *Board of Supervisors* (1977) 67 Cal.App.3d 839.) With respect to general references the common law rule and section 9 are the same, i.e. the reference is to the law as amended from time to time. This means that to the extent that section 9 applies to general references it simply restates the common law rule explained in *Palermo*. The conflict arises with specific references. Under the *Palermo* rule the reference to a specific law is to that law as it existed at the time the reference was made unaffected by any later amendments or even repeal. Under section 9 the reference is to the statute referred to as it is amended from time to time. Since we are to construe section 9 so as to avoid conflict with the common law rule when reasonably possible we examine section 9 carefully to determine the extent of that conflict.

The operative words of section 9 are: "the reference <u>applies to</u> all amendments and additions." (Emphasis added.) It does not say that all amendments and additions apply to the reference. A reference in one statute to another may serve two distinct purposes:

(1) <u>Application by reference.</u> The reference is made in one law to make it apply to another law specified in the reference.

(2) <u>Incorporation by reference.</u> The reference is made to another law to incorporate the provisions of the law referred to into the law making the reference.

Professor Read in an article entitled "Is Referential Legislation Worth While?" in 25 Minnesota Law Review 261 (1941) reprinted in volume 1A of Sutherland's work on Statutory Construction (4th Ed.) similarly distinguishes between the two basic kinds of reference statutes.[5]

Definitions and rules of construction are common examples of the first type, i.e. the definition or rule stated in one law is by statutory reference made to apply to another law or laws, often by a separate section providing that these definitions and rules of construction shall apply to all of the provisions of this article, chapter, division, code or some other defined body of law. E.g. section 5 provides: "Unless the provision or the context otherwise requires, these general provisions, rules of construction, and definitions shall govern the construction of this code." Applied strictly section 5 would make the general provisions, rules of construction and definitions apply to the provisions of "this code" as it was first enacted. What section 9 adds is to make the general provisions, rules of construction and definitions apply to all amendments and additions to the Government Code enacted after the Government Code was first adopted.

---

[5]Professor Read had this to say about the distinction between the two types of statutory references:

"A referential statute, accurately so-called, operates in either of two ways: <u>first</u>, and most commonly, the new act adopts precepts, in whole or in part, from other law; or <u>second</u>, the act provides that it shall be incorporated into all acts of a certain kind that may be passed in the future. [Fn.] Common examples of the latter are the general interpretation acts. [Fn.] (As statutes which use the former method are by far the more numerous and troublesome, all discussion hereafter will concern them unless otherwise is expressly indicated.) . . ."

The language of section 9 is found in most, but not all of the California codes.[6] In each case it is found in the introductory provisions of the code with other rules of construction and was included as one of the original provisions of the code when it was first enacted. We think the timing and placement of the section in these codes indicate that the primary purpose of the section was to make the rules of constructions and other general provisions of the codes applicable to all additions and amendments to those codes.

When a section reference incorporates the provisions of another statute into the section by means of the reference, the reference does not "apply to" the statute referred to, instead the statute referred to is made to "apply to" the section making the reference. Thus the words "apply to" in section 9 serve to limit its application to those sections in which the reference is made to "apply to" the statute referred to, and not to those in which the reference applies in the opposite direction, i.e., in which the referenced statute is made to apply to the statute making the reference. When the Legislature adds or amends a section of a code it is aware of the rules of construction, definitions and other general provisions it has placed at the beginning of the code to facilitate its interpretation. Section 9 makes those general provisions apply to additions and amendments to the code.

On the other hand when the Legislature undertakes to amend a statute, those involved may not be aware of code sections which have incorporated the provisions of the statute into those sections by reference because there is nothing in the statute being amended to indicate it has been incorporated into those sections. We do not think the Legislature intended section 9 to require future Legislatures to find all code sections incorporating the statute by reference before it amends such statute to determine how the amendment will affect those sections. Nor do we think the Legislature intended section 9 to automatically change the meaning of the sections making such reference in accordance with the amendment without making such determinations or without being aware it was changing those sections. We conclude that section 9 does not apply to a section which incorporates another statute into its provisions by the reference, such as Government Code section 66410, and the *Palermo* rule of construction remains applicable to such references.

---

[6]Language the same or similar to that found in section 9 of the Government Code is found in the following codes:

| Code | Section | Originally enacted |
|------|---------|--------------------|
| Business and Professions | 12 | Ch  399, Stats 1937 |
| Corporations | 9 | Ch 1038, Stats 1947 |
| Education | 4 | Ch   71, Stats 1943 |
| Evidence | 6 | Ch  299, Stats 1965 |
| Finance | 7 | Ch  364, Stats 1951 |
| Fish and Game | 5 | Ch  456, Stats 1957 |
| Food and Agriculture | 15 | Ch   25, Stats 1933 |
| Government | 9 | Ch  134, Stats 1943 |
| Harbors and Navigation | 9 | Ch  368, Stats 1937 |
| Health and Safety | 9 | Ch   60, Stats 1939 |
| Insurance | 9 | Ch  145, Stats 1935 |
| Labor | 9 | Ch   90, Stats 1937 |
| Military and Veterans | 9 | Ch  389, Stats 1935 |
| Public Resources | 9 | Ch   93, Stats 1939 |
| Public Utilities | 9 | Ch  764, Stats 1951 |
| Revenue and Taxation | 9 | Ch  154, Stats 1939 |
| Streets and Highways | 9 | Ch   29, Stats 1935 |
| Unemployment Insurance | 7 | Ch  308, Stats 1953 |
| Vehicle Code | 10 | Ch   27, Stats 1935 |
| Water | 9 | Ch  368, Stats 1943 |
| Welfare and Institutions | 9 | Ch  369, Stats 1937 |

We think the fact that section 9 refers only to amendments and additions and not to repeals supports our conclusion that section 9 applies only to applications by reference and not to incorporation by reference. In an application by reference when the law referred to is repealed there is no longer any need to have the statute making the reference apply to it so there is no need to consider repeals in this kind of reference. But where there is an incorporation of another statute into an operating statute a repeal of the referenced statute would remove that part of the operating statute incorporated by the reference unless the repealed statute survived for the purposes of the reference as in the common law rule of the *Palermo* case. It seems anomalous that the Legislature would have intended section 9 to implement amendments of the statute which is incorporated but not to implement its repeal insofar as its effect on the incorporating statute is concerned. This suggests that the Legislature did not intend section 9 to apply to incorporation by reference which would have created the anomaly with respect to repeals.

We have found little analysis of section 9 in the cases. In fact the only attempt to analyze the section 9 language we have found appears in a dissent in *Aetna Ca. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 414 wherein Justice Carter states:

> ". . . Section 9 [of the Labor Code which is virtually the same as section 9 of the Government Code] was aimed at situations where reference is made in one law to another as affecting or governing the procedure or rights provided for in the former. Thus it eliminates the uncertainty of whether the law to which reference was made would be considered as it existed at the time of the reference or as subsequently amended. . . ."

With all due respect to Justice Carter, this analysis was not adopted by the court and thus does not provide a judicial interpretation of the section 9 language.

The *Palermo* rule remains alive and well for the interpretation of provisions in codes which have no section 9 language. See *In re Monigold* (1988) 205 Cal.App.3d 1224, *In re Thompson* (1988) 206 Cal.App.3d 275, 284 and *In re Oluwa* (1989) 207 Cal.App.3d 439 interpreting the reference in Penal Code section 190 to article 2.5 providing for good behavior and participation credits to certain prisoners. The reference to article 2.5 was held to mean the way it read when the people amended Penal Code section 190 to include the reference by an initiative measure and not as it was later amended by the Legislature.

In *Board of Administration* v. *Ind. Acc. Com.* (1961) 195 Cal.App.2d 719, an action for retirement benefits, Government Code section 21026 provided that the commission was to make its decisions on retirement benefits "using the same procedure as in Workmen's Compensation hearings." The court held that a statute changing such procedures adopted after section 21026 was enacted was applicable citing section 9.

In *Mel* v. *Franchise Tax Board* (1981) 119 Cal.App.3d 898 Rev. & Tax. Code section 18045 provided: "For purposes of section 18044, the following property shall be considered to have been acquired from . . . the decedent: . . . (e) In the case of . . . the surviving spouse's one-half share of community property . . . if at least one-half of the whole of the community interest in such property was includable in determining the value of the decedent's gross estate under Chapter 3 of the California Inheritance Tax Law." The court held the amended versions of said chapter 3 were to be used in applying the rule citing Revenue and Taxation Code section 9 (identical to Gov. Code, § 9) and *Board of Admr.* v. *I.A.C.*, *supra*.

While both the *Board of Administration* and *Mel* case cited section 9 in determining the amended versions of the laws referred to were applicable to the statutory reference the courts'

rulings were not inconsistent with the *Palermo* rule.  In *Board of Administration* the reference was to the procedure in the Workmans Compensation Law and in *Mel* it was to chapter 3 of the Inheritance Tax Law.  In both cases the references might well have been found to be general references under the *Palermo* rule and so refer to the laws mentioned as they were amended from time to time.

In *People* v. *McGee* (1977) 19 Cal.3d 948  Welfare & Institutions Code section 11483 defined the offense of welfare fraud and the court had previously held that restitution must be sought before bringing a criminal action under that section.  The last sentence of section 11483 provided:  "All actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850."  After this sentence was added the Legislature repealed sections 12250 and 12850 and reenacted their substance in a new section 13200.  The court observed in footnote 3:  "Notwithstanding their repeal, sections 12250 and 12850 remain operative to the extent that they are incorporated into section 11483. `It is a well established principle of statutory law that where a statute adopts by specific reference the provisions of another statute . . ., such provisions are incorporated in the form in which they exist at the time of the reference . . . and that the repeal of the provisions referred to does not affect the adopting statute in the absence of a clearly expressed intention to the contrary.'" (Citing *Palermo*.)  The court made no mention of Welfare & Institutions Code section 9, identical to Government Code section 9.  We prefer to think that the Supreme Court was aware of section 9 and considered it inapplicable, not that it overlooked section 9.

For these reasons we believe that the reference in section 66424 to Section 11003.2 of the Business and Professions Code is an "incorporation by reference" and not an "application by reference" to which section 9 applies.  We conclude that Government Code section 9 has no application to the reference in section 66424 defining "subdivision" to Section 11003.2 of the Business and Professions Code and that the rules stated in the *Palermo* case are applicable to that reference.  Under the rules of *Palermo* section 66424 of the Government Code "adopts by specific reference the provisions of another statute," that is, the definition of "stock cooperative" set forth in section 11003.2 of the Business and Professions Code.  Accordingly, under these rules, section 66424  presently incorporates by reference that definition as set forth in section 11003.2 <u>on January 1, 1980</u>, the effective date of the subject incorporation, despite changes which have occurred in the statutory scheme.[7]

On January 1, 1980, section 11003.2 of the Business & Professions Code had just been amended by Statutes of 1979, chapter 1068, to add the final sentence and to read as follows:

"11003.2.  A `stock cooperative' is a corporation which is formed or availed of primarily for the purpose of holding title to, either in fee simple or for a term of years, improved real property, if all or substantially all of the shareholders of such corporation receive a right of exclusive occupancy in a portion of the real property, title to which is held by the corporation, which right of occupancy is transferable

---

[7]Indeed there have been significant changes since January 1, 1980.    Section 11003.2 of the Business and Professions Code no longer specifically defines "stock cooperative" but refers to the definition of that term which is <u>now</u> found in Civil Code section 1351, subdivision (m), a provision of the Davis-Sterling Common Interest Development Act.  (See Stats. 1985, ch. 874.)  Section 11003.2 also now specifically states that the exclusion of a "limited equity housing cooperative" from the definition of "stock cooperative" in that section is for the purposes of the Subdivided Lands Act.  Furthermore, Civil Code section 1351, subdivision (m), in its definition of a "stock cooperative" does include a "limited equity housing cooperative."

only concurrently with the transfer of the share of shares of stock or membership certificate in the corporation held by the person having such right of occupancy. <u>The term `stock cooperative' does not include a limited-equity housing cooperative, as defined in section 11003.4</u>"  (Emphasis added.)

Statutes of 1979, chapter 1068, also <u>added</u> section 11003.4 to the Business and Professions Code to read:

"A `limited-equity housing cooperative' is a corporation which meets the criteria of section 11003.2 and which also meets the criteria of section 33007.5 of the Health and Safety Code. A limited-equity housing cooperative shall be subject to all the requirements of this chapter [the Subdivided Lands Act] pertaining to stock cooperatives."

Thus, on January 1, 1980, section 66424 of the Government Code as amended did not include in its incorporation by reference of a "stock cooperative" a "limited equity housing cooperative."  The latter was specifically excluded from the Section 11003.2 definition.

Accordingly, both on January 1, 1980, <u>and</u> <u>now</u> under the rules of *Palermo* v. *Stockton Theaters*, *supra*, 32 Cal.2d 53, 58-59, a "subdivision" as defined in section 66424 of the Government Code did not nor does it now include a "limited equity housing cooperative" by reason of the subject incorporation by reference.[8]

### 2.  The General Language of Section 66424

A "stock cooperative" appears to have been first defined in our law in 1965 by the addition at the time of section 11003.2 to the Subdivision Lands Act.  (See Stats. 1965, ch. 988.)

It has been suggested that the general language of section 66424 of the Government Code is broad enough in its scope to include the conversion of existing multiple dwelling units to a "limited equity housing cooperative" even if such an entity is not specifically included through the incorporation by reference of section 11003.2 of the Business and Professions Code.

---

[8]In so concluding, we reject the possible argument that because the 1979 Legislature amended sections 66424 of the Government Code and section 11003.2 of the Business and Professions Code by separate bills at the same session, the Legislature intended to incorporate by reference the definition of "stock cooperative" in section 11003.2 as it read before it was amended at that session, and which did <u>not</u> exclude a "limited equity housing cooperative"; that in essence, there was legislative oversight in this respect.

We have found nothing in the legislative history which indicates a legislative intent one way or the other on this question.  Accordingly, we apply the rules of statutory construction to interpret the statutory language.

We also reject any argument that the provisions of sections 11003.2 <u>as presently constituted</u> no longer exclude a "limited housing equity cooperative" for purposes of section 66424 of the Government Code.  (See note 4, *ante*.)  Such suggestion flies in the face of the rules set forth in *Palermo*.

We reject this suggestion based upon case law. We begin with the premise that a "limited equity housing cooperative" is a form of "stock cooperative" (See now Civil Code § 1351, subdivision(m).) In *California Coastal Com.* v. *Quanta Investment Corp.* (1980) 113 Cal.App.3d 579 the court considered the question whether a "stock cooperative" conversion fell within the general language of section 66424 of the Subdivision Map Act as a "subdivision" prior to its amendment in 1979. (See Stats. 1979, ch. 1192). That amendment specifically included such conversions by incorporating by reference the definition found in section 11003.2 of the Business and Professions Code. On this point the court held that a "stock cooperative" was <u>not</u> included prior to the 1979 amendment, relying heavily upon two factors: First, there was an exemption in the Subdivision Map Act as to "financing or leasing of apartments, offices, stores or similar space within an apartment building" (see now § 66412, subdiv. (a) of the Gov. Code). Secondly, the court noted the fact that the Subdivided Lands Act specifically included a "stock cooperative" in its regulatory scheme whereas the Subdivision Map Act, a related statute, did not. The Court reasoned in part:

". . . Although *Wenig* and *Schultz*, *supra*, 14 Hastings L.J. 222, at page 227, speculate in their article and in the footnote cited that the map act `. . . seems broad enough to include the interest conveyed to a stock cooperative apartment purchaser,' they also concede that as of 1963, the date of their article, `the [Map] Act has never been applied to stock cooperatives.' As we have already indicated, we deem this to be so both because of the express legislative exemption which was not nullified until 1979 by Senate Bill No. 823, and because of the studied disparity in the way the Legislature treated the stock cooperative as distinguished from the condominium and community apartment from the very outset. Although Government Code section 66424 states that a subdivision includes a condominium and a community apartment and it is true the use of the term `include' in a statute is normally a term of enlargement (*Paramount Gen. Hos. Co.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501, nevertheless <u>the extended legislative history of making the stock cooperative subject only to the Subdivided Lands Act and omitting it from the map act while the community apartment and the condominium are expressly named in both acts, connotes a conscious legislative limitation of the map act to exclude the stock cooperative from its purview</u>. The overriding principle here applicable is that when a statute omits a specific matter from its coverage, the inclusion of such matter in another statute on a related subject demonstrates an intent to omit the matter from the coverage of the statute in which it is not mentioned. *Marsh* v. *Edwards Theaters Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891.)" (*Id* at p. 599, emphasis added.)

The court's reasoning above as to the noninclusion of a "stock cooperative" in the general language of the Subdivision Map Act is still viable today. This is particularly true when one considers that the court in its opinion emphasized the fact that the author of the 1979 amendments <u>failed</u> in his attempts to have such amendments declaratory of existing law. The court reinforced its holding from such fact. (*Id.*, at pp. 600-605.)

Accordingly, based upon the reasoning in the *Quanta* case, we conclude that the general language of section 66424 of the Government Code does not include a "stock cooperative," or consequently, "a limited equity housing cooperative."

CONCLUSION

In summary, we conclude that the granting of five or more 99 year leases to members of a "limited equity housing cooperative" does not constitute a "subdivision" within the meaning of the Subdivision Map Act. Such transactions 1) neither fall within the general language of section 66424 of the Government Code 2) nor do they constitute the conversion of five or more dwelling

units to a "stock cooperative" through the incorporation by reference in section 66424 of the definition of that term found in section 11003.2 of the Business and Professions Code.

* * * *